HOOK v. MERCANTILE TRUST CO. OF NEW YORK et al.

(Circuit Court of Appeals, Seventh Circuit. June 6, 1899.)

No. 495.

1. CONCLUSIVENESS OF DECREE—ADMITTING NEW PARTIES—EFFECT ON RIGHTS OF PURCHASER PENDENTE LITE.

Where one not originally a party is permitted to file a petition in a suit in equity, and to set up new and different rights from any involved in the original bill, such petition (at least, as against a stranger to the suit, who during its pendency, and before the filing of the petition, has acquired possession of the property in litigation) must be treated as the commencement of a new suit; and such person must be brought in by process in accordance with the established practice, or he will not be concluded by a decree in favor of the petitioner.

2. APPEAL—DEFENDANTS JOINTLY AFFECTED BY DECREE—JOINDER OF CO-DEFENDANT.

Where a decree provided in general terms for a conveyance and release by two defendants, who were husband and wife, of all their rights, titles, and interests in certain real estate, the title to a part of which was in the husband and a part in the wife, but under the statutes of the state each had a dower interest in the realty owned by the other, such decree, as to all of the property involved, affects rights of both defendants; and neither can maintain an appeal without joining the other, or obtaining an order of severance.

3. SAME—EFFECT OF GRANTING REHEARING.

It is the intention of the court that the granting of a rehearing without restriction shall operate to vacate its judgment, so that thereafter the cause shall stand as if no judgment had been entered.

4. SAME—MOTION TO DISMISS—WANT OF NECESSARY PARTIES.

A failure to join necessary parties on an appeal is jurisdictional, and a motion to dismiss on that ground may be entertained at any time before final disposition of the appeal.

Appeal from the Circuit Court of the United States for the Southern District of Illinois.

This case was first argued at the May session, 1898, and at the commencement of the present term of the court, on October 8, 1898, an opinion was handed down, reversing the decree in favor of the appellees upon their bills for foreclosure, but denying the appellant the relief sought upon her cross bill. 60 U. S. App. 647, 32 C. C. A. 238, 89 Fed. 410. Each of the parties asked a rehearing, and on February 7, 1899, at the adjourned January session of the court, both petitions were granted. Thereupon the appellees interposed a motion to dismiss the appeal on the ground that the decree appealed from is a joint one against the appellant, Mary B. Hook, and other defendants, especially William S. Hook, who did not join in, and were not served with notice of, the appeal, and from whom no order of severance was entered allowing the appellant a separate appeal. This motion requires that the statement of the case be made fuller, and in some particulars more specific, than before.

The Chicago, Peoria & St. Louis Railway Company, which, for brevity, will be here called the "Peoria Company," was organized on February 7, 1887, and became the owner, by consolidation, of the lines of railroad theretofore known as the Peoria, Pekin & Jacksonville, extending from Jacksonville, through Havana, to Pekin, and the Springfield & Northwestern, extending from Havana to Springfield. This road, the Litchfield, Carrollton & Western, the Louisville & St. Louis, and the Jacksonville Southeastern were operated under the control of William S. Hook, as president or general manager, as one system, known as the Jacksonville Southeastern Line, and books were kept in that name of the accounts of the various corporations concerned. On March

1, 1888, the Peoria Company executed a mortgage in the form of a trust deed to the Mercantile Trust Company to secure bonds to the amount of $1,500,000; on July 15, 1889, it executed a mortgage to the Central Trust Company, as trustee, to secure first consolidated mortgage bonds, so called, to the amount of $1,041,000, to enable it to redeem prior bonds, and to discharge obligations incurred in the acquisition and construction of its lines, one of which was described as terminating at Jacksonville, and one as a line to be constructed from Litchfield to East St. Louis; and on June 1, 1891, it executed to the Metropolitan Trust Company, as trustee, a third mortgage, covering all its lines, one of which was described as "terminating in the city of East St. Louis," to secure bonds to the amount of $2,500,000. There having been default in the payment of interest coupons of each series of bonds, suits for foreclosure were brought by the respective trustees,—by the Mercantile Trust Company on September 21, 1893, by the other companies on later dates; and on October 26, 1893, the three suits were consolidated under the title of the first. By subsequent amendments and supplemental bills, William S. Hook, Mary B. Hook, and Marcus Hook were made defendants; and it was alleged, as ground for relief against them, that certain rolling stock, rights of way, and depot grounds, including the terminals at East St. Louis and Jacksonville, which are the subjects of controversy on this appeal, were acquired for, and belonged to, the defendant railway company, and were subject to the several mortgages sued on, though the title thereto appeared to be in William S. Hook, Mary B. Hook, and Marcus Hook,—the terms of the averment concerning the lands being, "The title to which said lands or rights of way now stand of record in the respective names of said William S. Hook and the said Mary B. Hook, as hereinafter stated." There follow descriptions showing the East St. Louis property "standing in the name of said Mary B. Hook," and all the lands described in the decree, except those at East St. Louis and Jacksonville, and certain lots described in amendments to the bills for foreclosure, "standing in the name of said William S. Hook." No joint ownership was alleged. These defendants answered separately to the effect that the terminal property at East St. Louis was conveyed by the Wiggins Ferry Company to William S. Hook in the year 1882, before the Peoria Company was organized or thought of; that, at the time of the purchase, Marshall P. Ayers and Augustus E. Ayers were connected in railroad enterprises with William S. Hook, and had purchased the terminal properties, together with other pieces, partly in the name of William S. Hook and partly in the name of Marshall P. Ayers; that on December 29, 1886, an account was taken, and it was found that the sum of $30,871.56 was owing and due to M. P. Ayers & Co., bankers at Jacksonville, Ill., for moneys advanced by Augustus E. and Marshall P. Ayers upon the purchases made, including the property at East St. Louis; that on that date William S. Hook, Marshall P. Ayers, and Augustus E. Ayers executed to M. P. Ayers & Co. a promissory note for the amount stated, and at the same time, or soon thereafter, executed a declaration of trust, which included the premises in question, to secure the payment of the debt evidenced by the note; that pending a suit in the circuit court of Morgan county, Ill., to subject the premises to sale, as the property of the Jacksonville Southeastern Railway Company, upon an execution against that company, M. P. Ayers & Co. transferred the note and security therefor to William S. Hook, in consideration of the payment by him of the amount of the debt, and William S. Hook in turn transferred the same to Mary B. Hook, in consideration of the advancement by her to him of the sums so paid, and that in that suit the declaration of trust was adjudged to be valid, and to constitute a lien prior to the lien of the execution of the complainants in the suit, and it was ordered that the premises be sold, and the proceeds of the sale applied first to the discharge of that lien. Besides pleading the facts stated, and claiming that the decree so rendered was an estoppel against the Peoria Company and against all claiming under that company, which, it was alleged, acquired possession pending the suit, the appellant, Mary B. Hook, set up the same facts in a cross bill, and by a supplemental bill showed that by virtue of the decree a sale had been made to her, and that on the expiration of the time allowed for redemption she had received a deed of conveyance. It was alleged in the answer of each of the defendants, and in the cross bill of the appellant, that the properties in dispute were not purchased for, nor an

agreement ever made for the sale thereof to, the Peoria Company, and that the possession of that company had begun and been maintained under contract of lease at an annual rental of $2,000, which, however, since 1893, had not been paid. She prayed an adjudication of her title and a decree for unpaid rent. Issues having been joined by replications in the usual form, the court on July 10, 1895, entered a decree of foreclosure and sale, reserving "the remaining undisposed of claims, issues, and equities raised by the answer of the defendants William S. Hook, Mary B. Hook, and Marcus Hook," and of other parties mentioned, for further consideration and adjudication, unaffected by the sale, which, however, by the terms of the decree, was to "include all and singular the right, title, and interest of the defendant railway company, and of the respective complainants, as mortgagees, in and to the property claimed by any of the defendants," or, as expressed in the twenty-eighth clause of the decree, "the property pertaining thereto, including such portion [as is] claimed by the individual defendants, or any of them." Sale was made, reported, and confirmed, and deed ordered, executed, reported, and approved. Upon the reserved issues, the master, to whom the reference was made, reported the evidence and his conclusions. In respect to the East St. Louis property he found the facts to be substantially as stated in the answer and cross complaint of the appellant, and reported his conclusion that the title was hers, and had never belonged to the Peoria Company. The Jacksonville property, he reported, had been purchased by Hook and Ayers in 1882, 1883, and 1884, had been included in the declaration of trust, and had taken the same course as the property in East St. Louis, being now in the name of Mary B. Hook. The exceptions of the complainants to these parts of the report the court sustained, and declared a finding of its own,—"that subsequent to the 1st day of March, 1888, and prior to the 21st day of September, 1893, the defendant William S. Hook, for and in behalf of the defendant the Chicago, Peoria & St. Louis Railway Company, acquired for use, in connection with the said line of railway and the business thereof, certain parcels of land and rights of way over the same; that the parcels of land and rights of way thus acquired were purchased with funds belonging to said defendant railway company, and the title thereto taken in the name of said William S. Hook; that the parcels of land and rights of way thus acquired are more particularly described as follows." In the description which followed were included the terminals at East St. Louis and Jacksonville, and a decree was accordingly entered that those properties belonged to, and should be conveyed by the appellant, or in default thereof by the master, to, the Chicago, Peoria & St. Louis Railroad Company, which, by the foreclosure sale and the conveyance thereunder made, had succeeded to the rights of the Peoria Company. It is stated in the finding that the legal title to all the premises described and found to have been acquired for the Peoria Company "is in the defendant William S. Hook, with the exception of the following, which is in the name of Mary B. Hook, to wit," those at Jacksonville and East St. Louis, the title to which, it is found, was placed in her name after the commencement of the several foreclosure suits. It is also found that the allegations of the cross bill and of the amended and supplemental cross bill of Mary B. Hook are untrue. The decree is that the cross bills be dismissed; that the master commissioner execute to the purchaser at the sale a deed conveying the properties described, with all the right and equities of the defendants; that the defendants the Peoria Company, William S. Hook, Mary B. Hook, and Marcus Hook, and others named, "severally execute their deed or deeds, or join with the master commissioner in the execution of the deed or deeds to be made by him * * * of the respective properties described in paragraph 1 of this decree, or the portion thereof covered by the respective mortgages to said trust companies, and shall convey and release to the said Chicago, Peoria & St. Louis Railroad Company of Illinois their rights, titles, and interests in the property described." This decree was entered on December 31, 1897.

The suit in the circuit court of Morgan county was brought on November 8, 1890, by Kennedy, Tower, and Catherwood, trustees in a mortgage executed by the Jacksonville Southeastern Railway Company, on the theory that the properties sought to be reached were bought for and with the money of that company, and therefore belonged to it. Besides the railway company, William

S. Hook, Marshall P. Ayers, and Augustus E. Ayers were made defendants; it being averred in the bill, on information, that they claimed to have advanced individual moneys to the amount of $30,000 upon the purchase price of the properties described, and were holding the titles thereto to secure the repayment to them of that sum. Process was served on all of the defendants, and the defendants Ayers answered, setting up the declaration of trust as a prior lien upon the properties for the amount of the debt evidenced by the note to M. P. Ayers & Co., but not disputing that, subject to that lien, they belonged in equity to the Jacksonville Southeastern Railway Company, and were liable to sale under the execution which the complainants had caused to be levied thereon. A cross bill was also filed by the defendants Marshall P. Ayers and Augustus E. Ayers, jointly with John A. Ayers, who with them composed then the firm of M. P. Ayers & Co., setting forth the same facts and implying the same theory. The railway company and William S. Hook did not answer or appear to the bill, and were not defaulted, but they joined in a demurrer (never ruled upon) to the cross bill of the Ayerses. The cause was continued from term to term until the May term, 1893, at which the court entered a decree, the substance of which is a finding and adjudication, according to an agreement filed, of the relative rights of Hook and of M. P. and Augustus E. Ayers in the note secured by the deed of trust, it being adjudged that Hook, on payment of the sum of $12,813.43, with interest, in addition to other sums already paid, should be subrogated to the right, title, and interest of Marshall P. Ayers and Augustus E. Ayers in and to the premises described in the declaration of trust, and that upon payment to them of that sum, with interest, the Ayerses should execute to Hook a deed of quitclaim for the premises; and upon a further finding that judgment had been recovered by the complainants, and execution issued and levied as alleged in the bill, it was decreed that the master in chancery of the court "proceed to sell all and singular the right, title, and interest of the Jacksonville Southeastern Railway Company in and to the real estate hereinafter described,—subject, however, to the debt of the said William S. Hook, as subrogated in this decree, and of [to] the debt provided for, yet unpaid, to the said M. P. Ayers & Co., as found in said stipulation," etc. The decree contains no reservation or provision for further proceedings, except "that the master report his proceedings under this decree to this court." After the entry of this decree no further step was taken until the next November term of court, at which, on December 26, 1893, Mary B. Hook presented a petition, entitled in the cause, in which she set out at length the previous pleadings, proceedings, and the agreement on which the finding and decree were based, and alleged full payment by William S. Hook to the Ayerses of the remaining sum due them, and that William S. Hook, having so acquired the entire interest, had assigned the debt and the declaration of trust to her in consideration of moneys to the full amount of the debt advanced by her to enable him to make the purchase of the Ayerses. Without notice to any of the parties to the original suit, and without recital of appearance by any of them, the court permitted this petition to be filed, and thereupon, on the same day, entered a decree whereby, after reciting the previous proceedings at length, and finding, among other things, "that the said Mary B. Hook has acquired all of the right, title, and interest, both in law and in equity, of the respondent William S. Hook in and to all the real estate described in said deed" (of trust), it was ordered "that the decree entered herein at the May term, A. D. 1893, of this court by consent be set aside; that this cause stand upon the docket in the name of the original complainants, and against the respondent Mary B. Hook"; and then, after a finding "that the complainants have a right to proceed with the sale of said property to satisfy said executions, but subject to all the rights vested in the said Mary B. Hook as hereinbefore found," it was adjudged and decreed that the Jacksonville Southeastern Railway Company pay to the master, for the use of Mary B. Hook, the sum of $43,-939.40, with interest, and $61,475, with interest, for the use of the complainants, and that in default of such payments within 10 days the master should proceed "to sell all and singular the real estate described in the bill in this cause," and out of the proceeds pay, in their order, the costs, the sum due to Mary B. Hook, and that due to the complainants, and the remainder, if any, turn over to the Jacksonville Southeastern Railway Company.

This appeal, taken on February 25, was perfected by filing the transcript with the clerk of this court on April 2, 1898. On June 27, 1898, William S. Hook, without notice to the appellant or other co-defendants, filed an assignment of errors, and was granted a separate appeal, and having obtained of this court an order allowing the use of the printed transcript in this case, supplemented with a certified copy of the order allowing his appeal and entries connected therewith, on December 2, 1898, within the time allowed by enlarging orders, filed the transcript with the clerk of this court. The briefs in his behalf conclude with the assertion that the decree is erroneous for four reasons, stated as follows: "First. Because it found the East St. Louis & Jacksonville terminal property has been acquired with the funds of the Peoria Company, and was incumbered by the trust deeds mentioned, and that said liens were prior to any right of appellant in said property. Second. Because the court held by said decree that the Peoria Company, and through it the appellees, were entitled to have the title to said premises conveyed to the Peoria Railroad Company of Illinois, thereby devesting the appellant of his superior title to the same. Third. Because by the decree it was held that the real estate situated in Jacksonville, Illinois, and described on page 778 of the transcript, and which was purchased some fifteen years before there was a Peoria Company, was subject to the trust deeds, and must be conveyed by the master and by the appellant to the Peoria Railroad Company, when there is not a pretense of any evidence showing any lien, or contract for a lien, upon said real estate named, by or through which the Peoria Company ever acquired any interest in or right to any part of said real estate. Fourth. Because the decree requires the master to convey, and requires appellant to join in said conveyance conveying, all of the real estate described, the title to which appears to be in appellant, when it appears the Peoria Company had no power to receive or take the title to the same, and could not, therefore, convey any equity to the appellees." The first three of these propositions, it will be observed, have reference to the terminal properties claimed by Mrs. Hook, and involve a repetition of the questions presented by her appeal.

Thomas Worthington, for appellant.
Bluford Wilson and P. B. Warren, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The motion to dismiss and the merits were argued at the same time. The opinion of the court is that the motion must be sustained, and for that reason it is not necessary to decide again the merits of the case; but it is proper to say that the rehearing was ordered mainly because the judges who composed the court when the case was first heard, except Judge Showalter, who died before the petitions for rehearing were considered, were convinced that the equitable title to the property in suit had been acquired by the Peoria Company, substantially as stated in the finding below; and, that being now the opinion of the court, the reasons therefor will be stated briefly:

The finding that the properties were acquired for the Peoria Company between March 1, 1888, and September 21, 1893, it is clear, does not refer to acts of original acquisition in the years 1882, 1883, and 1884, but must be accepted as meaning that by later transactions, culminating between the dates named in the finding, the properties were acquired and paid for as stated. So construed, the finding rests upon sufficient proof. The contrary conclusion, declared in our first opinion, was due in part to a too technical view of the evidence,

considered piecemeal rather than as a whole, but more especially to a failure to consider the fact (not mentioned in the briefs then before the court) that the terminals in question (certainly those at East St. Louis) were designated as the property of the Peoria Company upon a map made at the time of, or soon after, the construction of the road into East St. Louis. Besides that property, it appears that the right of way from Litchfield to East St. Louis, and every piece of land of the Peoria Company, about the title to which, whether taken in one name or another, there was no dispute, were designated on that map by red boundary lines, and by the initial letters of the name of the company. The map having been made by the engineering department of the Jacksonville Southeastern Line, working under the authority of William S. Hook, counsel for appellees contend that it amounted to a dedication by Hook and the Jacksonville Southeastern Line of the properties designated to the Peoria Company, "as good between the parties as a warranty deed." Whether the platting constituted an irrevocable dedication or not, the fact is of great significance, in that it gives coherence and a new direction to the other proofs, which, without that fact, we deemed insufficient to establish title in the Peoria Company. The map, in connection with the other evidence, we are convinced, warrants the inference that, when that company was put in possession of the properties designated, it was as owner in its own right, and was so intended by all concerned. Everything done before and afterwards points that way. The original purchase, it is true, was made with money of the Jacksonville Southeastern Railway Company,—the entire price, and not the larger part thereof, merely, as stated in our first opinion, being paid out of the funds of that company; but the amount was afterwards carried to the "clearance books" of the Jacksonville Southeastern Line, and probably should be deemed to have passed to the credit of the Peoria Company. That fact, however, is denied, and need not be determined. The Peoria Company, besides owning a large share of the stock of the Jacksonville Southeastern Company, it is clear, was the chief, if not the sole, contributor to the earnings over expenses of the Jacksonville Southeastern Line. Besides, if the original trust or equitable lien in favor of the Jacksonville Southeastern Railway Company was not extinguished by a repayment of the purchase money, that company never asserted title or interest, and Hook, holding the legal title, proceeded to deal with the property as if under no obligation to that company. It appears probable, on the evidence, that he came under an equal or greater obligation to the Peoria Company; but on that point, too, there is dispute, and we make no attempt to clarify accounts which the witnesses found and left in confusion. The burden of proof in that respect was on Hook, who was in fiduciary relations to all the companies concerned; and, if inferences against him were necessary, it would not be unreasonable to draw them. While there is no direct evidence of the making of a contract for a transfer of title or an indefeasible interest in the disputed properties to the Peoria Company, there is, in the maps and other evidence adduced, the items of which are referred to in our first opinion and need not be stated again, ample ground for the inference that

Hook, holding the title, and representing practically all interests concerned, determined or agreed for all that that company should take possession, improve, and own the property. Terminal facilities at. East St. Louis for that company, and for that alone of all the companies which he represented, were indispensable, then and for the indefinite future; and the same foresight which led him to obtain title to the property in 1882 dictated that he then acquire it for or appropriate it to the immediate and permanent use of that company. To do so was only to execute his original design. To have done less would hardly have been an adequate discharge of his duty to that company, and that he did his duty in that respect the evidence, though inferential, is nevertheless convincing. Under the circumstances, a lease on any conceivable terms could hardly have been reasonable,— certainly not an indefinite lease, terminable at will, or a mere license. No witness testified, and there is no evidence to justify an inference, that a lease was made. William S. Hook, though a witness in the case, was silent on that subject; and Marcus Hook, testifying about conversations with William S. concerning rental values, but not saying that a lease was made, compels the inference that he had no knowledge of the making of one, and perhaps knew that none had been agreed upon.

The finding of the master that the two terminal properties belonged to Mary B. Hook, and not to the Peoria Company, as he found in respect to other properties held in the name of William S. Hook or of some of his associates, seems to rest solely upon the proceedings in the circuit court of Morgan county; but by no possible construction can those proceedings affect the Peoria Company. While it still seems to us the better opinion that the decree of May 26, 1893, in that case, was final, and merged the agreement on which it was based, and that consequently the proceedings of the next term, in December, were had without jurisdiction of the parties,—the words "by consent," even if treated as referring to the words "set aside," not being sufficient to show an appearance by any particular party,—yet, even if the decree then rendered in favor of Mrs. Hook be regarded as conclusive of the rights of all parties upon whom process had been served, it does not bind the Peoria Company, notwithstanding it had obtained possession pending the original suit. It had been in possession more than two years when Mrs. Hook intervened. The petition which she was permitted to file asserted a new and different right from any involved in the original bill, and as against the Peoria Company, even if not against the defendants named in the original bill and served with process, was equivalent to the bringing of a new suit, of which notice, unless waived, must have been given according to the established practice. 5 Enc. Pl. & Prac. 658.

We pass to the motion to dismiss: Had Mary B. Hook a right to take and prosecute her appeal without joining William S. Hook, or obtaining an order of severance? The principal question involved in her appeal is of the validity and effect of the decree which she obtained in the Morgan circuit court. That William S. Hook is directly interested in that question is evident. The decree of the state court, if valid, determined, between all the parties, and cer-

tainly between the appellant and William S. Hook, that a deed of trust had been executed as alleged, that the deed was valid, that it constituted a lien prior to any and all rights of others, that on the considerations stated he had acquired the lien of M. P. Ayers & Co., and had transferred it, in its entirety, to the appellant; but all these things the decree appealed from either reversed or set at large. In this respect the case is not different from the one recently decided by this court in Elevator Co. v. Nichols, 34 C. C. A. 90, 91 Fed. 832. See, also, Davis v. Trust Co., 152 U. S. 590, 14 Sup. Ct. 693. It is perhaps true, as contended, that in so far as the decree directed the execution of deeds by the appellant and William S. Hook, it is, in a sense, several, meaning that the appellant should convey the terminal properties, the titles to which were found to be in her name, and that William S. Hook should convey the properties described, of which the titles were found to be in his name; but, when it is considered that they are husband and wife, it is hardly to be doubted that the decree was intended, and should be construed, to require that each join in the deed of the other. By an act passed in 1874 a married woman was given power, in Illinois, to sell and convey real property to the same extent and in the same manner that the husband could convey realty belonging to him. But at the same time the husband's estate of curtesy was abolished, and instead thereof it was enacted that "the surviving husband or wife shall be endowed of the third part of lands whereof the deceased husband or wife was seised of an estate of inheritance at any time during the marriage, unless the same shall have been extinguished in legal form," etc., and, further, that "equitable estates shall be subject to such dower." 2 Starr & C. Ann. St. (2d Ed.) p. 1456. It follows that, if the master's report had been confirmed, William S. Hook would have had a right of dower in the properties of which the master reported title in Mrs. Hook. While the title stood, as originally taken, in the name of William S. Hook, Mrs. Hook had an apparent right of dower; or, to say the least, she was in a position to assert such right in any of the properties of which her husband held the title, or in which he owned an equitable and inheritable estate. Whether the right in fact existed, or whether the different properties were held under trusts which excluded claims of dower, were questions involved in the litigation, and were determined by the decree. Whether or not, therefore, a joinder in the execution of deeds was intended, or was necessary in order to cut off dower rights, the decree itself is conclusive against the assertion of such rights by either of these parties, and to that extent is a joint decree against them, or at least is a decree in which each has an interest which would be affected by a reversal or modification in behalf of the other. In conformity with this view is the last clause of the decree, that the defendants "shall convey and release * * * all their rights, titles, and interests in the property described." That requirement is distinctly joint in form. Without impairing its force, it is incapable of severance, and presumably was framed for the purpose of removing all question on the subject by covering all possible interests, whether several or joint. If, upon proper notice, William S. Hook had failed or refused to join in this

appeal, he would have been estopped "from bringing another appeal for the same matter," as he has endeavored to do. Hardee v. Wilson, infra.

It is further contended that the judgment of this court rendered upon its first opinion was not vacated by the granting of a rehearing, and that, the judgment so rendered being still in force, the motion to dismiss came too late. The petition of the appellees for a rehearing challenged the opinion of the court in its entire scope, and, as already explained, was granted for reasons equally comprehensive. The intention of this court is that the granting of a rehearing without restriction shall operate to vacate its judgment, so that thereafter the cause shall stand as if no judgment had been entered. The question presented by the motion to dismiss, the supreme court several times has declared, is jurisdictional, and, it follows, may be raised at any time before final disposition of the appeal. See the following cases, and cases cited: Wilson's Heirs v. Insurance Co., 12 Pet. 140; Estis v. Trabue, 128 U. S. 225, 9 Sup. Ct. 58; Mason v. U. S., 136 U. S. 581, 10 Sup. Ct. 1062; Dolan v. Jennings, 139 U. S. 385, 11 Sup. Ct. 584; Hardee v. Wilson, 146 U. S. 179, 13 Sup. Ct. 39. The appeal is therefore dismissed.

Judge GROSSCUP, by reason of sickness, did not share in the final consideration of this case.