CHAS. WOLFF PACKING COMPANY v. THE COURT OF INDUSTRIAL RELATIONS OF THE STATE OF KANSAS.

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

Nos. 207 & 299. Argued Nov. 20, 1924.—Decided April 13, 1925.

1. When a judgment entered by a state court is modified by another entered after a rehearing, the second supersedes the first, and a writ of error to the second alone is proper for review in this Court. P. 561.

2. A decision of a state Supreme Court that provisions of a statute of the State are separable is conclusive on this Court in the case. P. 562.

3. A judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided.

*Held* that the former decision of this Court in this case (262 U. S. 522) holding the Kansas Industrial Relations Act unconstitutional in so far as it permitted the fixing of wages in plaintiff in error's packing plant, and reversing the judgment of the Kansas Supreme Court for that reason, was neither an adjudication that the entire act was invalid nor an adjudication that its provisions for fixing hours of labor were valid. P. 562.

4. The Industrial Relations Act of Kansas, which seeks to promote continuity of operation and production in the industries to which it relates by compelling employer and employees to submit their controversies to compulsory settlement by a state agency, is, as applied to a manufacturer of food products, unconstitutional, not only so far as it permits compulsory fixing of wages, (as previously decided, 262 U. S. 522,) but also, and for the same reasons, in the provision for compulsory fixing of hours of labor, since the compulsion in both these features alike is but part of a system by which the act seeks to compel owner and employees to continue in business on terms not of their own making, which infringes the rights of property and liberty of contract guaranteed by the due process of law clause of the Fourteenth Amendment. P. 563.

5. Whether a power conferred on a state agency to fix hours of labor would be valid if it were conferred independently, and made either general or applicable to all business of a particular class, is not considered. P. 569.

114 Kans. 304, 487, reversed.

ERROR to a judgment of the Supreme Court of Kansas entered, upon rehearing, after receipt of the mandate issued from this Court upon a previous reversal, 262 U. S. 522. The judgment awarded a mandamus to compel obedience to an order of the Kansas administrative agency called the Court of Industrial Relations, in so far as it purported to fix the hours of labor and pay for over time in the meat packing plant of the plaintiff in error.

*Mr. D. R. Hite,* with whom *Messrs. John S. Dean* and *Harry W. Colmery* were on the brief, for plaintiff in error.

The mandate and judgment of this Court required the vacation of the judgment of the Kansas Supreme Court as a whole and did not authorize its modification upon the original record, § 709 Rev. Stats.; *Cowdrey* v. *Bank,* 139 Cal. 293; *Davis* v. *Healey,* 22 N. J. 115.

The object of the Industrial Court Act is the compulsory arbitration of disputes between employers and employees in designated industries, endangering continuity of operation of such industries. The act was not concerned with the health of employees engaged in operating such industries. *Howat's Case,* 109 Kan. 376; *Industrial Court* v. *Packing Co.,* 109 Kan. 645; *Industrial Court* v. *Packing Co.,* 111 Kan. 501; *Dorchy* v. *Kansas,* 264 U. S. 286; *Packing Co.* v. *Industrial Court,* 262 U. S. 522.

*Bunting* v. *Oregon,* 243 U. S. 426, is not authority for upholding the order of the industrial court fixing hours and conditions of labor. *Packing Co.* v. *Industrial Court,* 262 U. S. 522; *Lochner* v. *New York,* 198 U. S. 45; *Dorchy* v. *Kansas, supra; Adkins* v. *Childrens Hospital,* 261 U. S. 525.

Considered as a statute authorizing an order fixing hours and conditions of labor for packing house employees, the act creating the Court of Industrial Relations encounters the Fourteenth Amendment. *Packing Co.* v. *In-*

*dustrial Court, supra; Lochner* v. *New York, supra; Dorchy* v. *Kansas, supra; Allgeyer* v. *Louisiana,* 165 U. S. 578; *Adair* v. *United States,* 208 U. S. 161; *Coppage* v. *Kansas,* 236 U. S. 1; *Truax* v. *Raich,* 239 U. S. 33; *Prudential Insurance Co.* v. *Cheek,* 259 U. S. 530; *Smyth* v. *Ames,* 169 U. S. 467; *Hairston* v. *D. & W. Ry. Co.* 208 U. S. 606; *Mugler* v. *Kansas,* 123 U. S. 661; *St. Louis Ry. Co.* v. *Arkansas,* 235 U. S. 350; *People* v. *Road Co.* 9 Mich. 285; *Cooley's Const. Lim'ns.* 7th ed. p. 838; *Brick Co.* v. *Perry,* 69 Kan. 300; *Howard* v. *Schwartz,* 77 Kan. 609.

The parts of the order sustained by the Kansas Supreme Court are void because the necessary effect is to increase the operating expenses of the packing company against its will, notwithstanding the income of the company was and is insufficient to pay the cost of raw material and operating expenses, including the increase of wages required to be paid by such order. *Reagan* v. *Farmers Loan & Trust Co.* 154 U. S. 362; *Railway Co.* v. *Mills,* 253 U. S. 206; *Pa. Coal Co.* v. *Mahon,* 260 U. S. 393.

*Mr. John G. Egan* and *Mr. Chester I. Long,* with whom *Messrs. Charles B. Griffith, Randal C. Harvey* and *Austin M. Cowan* were on the brief, for defendant in error.

After reversal and direction to take further proceedings not inconsistent with the opinion of the Supreme Court of the United States, a state court has authority to determine questions not decided by the higher court and to modify its judgment accordingly. The authorities uniformly hold that a judgment of reversal is not an adjudication of any question other than the one actually discussed and decided. *Mutual Life Ins. Co.* v. *Illinois,* 193 U. S. 551; *Erie Ry. Co.* v. *Western Trans. Co.* 204 U. S. 220. See also: *In re Potts,* 166 U. S. 263; *Murphy* v. *Utler,* 186 U. S. 99; *Sou. Building Etc., Co.* v. *Carey,* 117 Fed. 325; *Gt. Northern Ry. Co.* v. *West. Union Tel. Co.,*

174 Fed. 321; *Taenzer* v. *Railway Co.* 191 Fed. 543; *General Inv. Co.* v. *Ry. Co.* 269 Fed. 235. The application of the rule to the case at bar is exemplified by the recent case of *Hallanan* v. *Eureka Pipe Line Co.*, 261 U. S. 393.

In the cases cited above, no distinction is made in cases where further evidence was introduced and the pleadings amended in the lower court and those where no further proceedings were had except the entering of a decree pursuant to the mandate. The question of the validity of the statute and order relating to hours of labor was not determined by this court in the former appeal.

The Kansas Industrial Court law, in so far as it authorizes fixing hours of labor in plaintiff in error's packing plant and penalizes overtime, is valid. The Supreme Court of Kansas, from the start of this litigation, has interpreted the statute as having among its purposes the protection of the health of the workers, and has recognized the fixing of hours of labor as a method of protecting their health. That Court has construed the statute to empower the Court of Industrial Relations to take jurisdiction of this controversy between the Wolff Packing Company and its employees over hours of labor. This jurisdiction can be sustained though the provision of the statute declaring the packing industry to be affected with a public interest be ignored.

The opinion of this Court when this case was here before did not say that the business of meat packing might not to any extent be affected with a public interest. The opinion does not intimate that the legislature may not to some extent remove obstacles to the continued or efficient operation or service of the meat packing industry. That the State may to some extent at least remove such obstacles is plain from the establishment by States and by National Government of boards of mediation, conciliation or arbitration to settle disputes between employers and employees.

In addition to taking jurisdiction of a controversy which may endanger the continuity or efficiency of service of the meat packing industry, the Court of Industrial Relations may, under § 7 of the act, take jurisdiction of a controversy that may " affect the production or transportation of the necessaries of life affected or produced by said industries or employments, or produce industrial strife, disorder or waste, or endanger the orderly operation of such industries, employments, public utilities or common carriers, and thereby endanger the public peace or threaten the public health."

For the purpose of this argument, we can pass the question as to the power of the Court of Industrial Relations to take jurisdiction of a controversy which " may endanger the continuity or efficiency of service of any of said industries," and consider the other cases where, under § 7, it may take jurisdiction. To some extent the State may intervene to keep open a market to its producers of live stock, to protect the supply of meat food, to prevent the obstruction, crippling or breaking down of the meat-packing industry and the interruption of the loss of employment of the workers therein. An injury to the employer in the industry or to the employees is an injury to public welfare. The interruption or loss of employment of the workers means a deprivation to them and their families and a blow to the prosperity of the community in which they live.

The dispute at this plant concerning hours of labor presented a controversy that affected the production of the necessaries of life produced at the plant, caused industrial strife, disorder and waste, injured the orderly operation of the plant, and thereby endangered the public peace and threatened the public health. The facts presented in the controversy come within the provisions of § 7 authorizing the Court of Industrial Relations to take jurisdiction. The dispute over hours of labor was one of

the grounds of the controversy.   The court properly took jurisdiction and ordered relief which, if carried out, would remove one of the causes of the controversy and would do away with injuriously long hours of labor.   This relief was within the purview of the statute and within the power of the State.

The act is uniform in its operation and there is no denial of the equal protection of the laws.   *Radice* v. *New York,* 264 U. S. 292.   All manufacturers of food products are equally subject to the Industrial Court law, so far as it is valid.

Hours of labor in packing plants are a proper subject. for regulations under the police power.   *Holden* v. *Hardy,* 169 U. S. 366; *Bunting* v. *Oregon,* 243 U. S. 426; *Adkins* v. *Childrens Hospital,* 261 U. S. 525; *Radice* v. *New York, supra.*   The Court of Industrial Relations has found the fact that prolonged hours of labor are detrimental to the health of the worker, and to the public welfare, in the plant of the plaintiff in error, and this finding is supported by the evidence in the record, and has been approved by the Kansas Supreme Court.   This finding is entitled to the same consideration given that of the legislature in *Holden* v. *Hardy, supra; Bunting* v. *Oregon, supra; Radice* v. *New York, supra.*   But the validity of the order in question concerning hours does not depend in any respect on the public interest or lack of public interest in the meat packing industry.   This was important on the question of wages, but not as to hours of labor.   In neither the *Holden, Bunting* nor *Radice* cases, cited above, was the nature of the business considered except its effect on the health of the worker, and practically all the indus-. tries affected thereby were impressed with no public interest whatever, and certainly not as much as is conceded to the packing industry in the first decision of this case. Hours of labor is a proper subject for regulation in any industry where prolonged hours are detrimental to the

health of the workers. The portions of the statute relating to hours are valid despite the invalidity of the wage-fixing provisions. *Dorchy* v. *Kansas, supra; State* v. *Howat,* 107 Kan. 423; *State, ex rel.,* v. *Howat,* 109 Kan. 376; *The State* v. *Howat,* 116 Kan. 412.

There is no inconsistency between these decisions and the case of *Hill* v. *Wallace,* 259 U. S. 44, where this Court found invalid certain sections of the futures trading act (c. 76, 42 Stat., 178), and likewise found other sections invalid because so interwoven with the invalid regulations that they could not be separated. See *United States* v. *Reese,* 92 U. S. 214. All that is necessary here, and all that has been done by the State Supreme Court, is to strike out the invalid word " wages " and the invalid provisions relating to wages only. An important distinction between this case and the cases of *Hill* v. *Wallace* and *United States* v. *Reese,* is that in both of those cases a federal statute was involved, and it was the primary duty of this Court to decide whether such statutes were severable. But in the case at bar a state statute is involved, and the duty of determining its severability falls upon the state court, and the state court has held the statute to be severable. The order affects women as well as men.

Freedom of contract as to hours of labor must yield to police power. *Wilson* v. *New,* 243 U. S. 332; *Bunting* v. *Oregon, supra; B. & O. R. R. Co.* v. *I. C. C.,* 221 U. S. 612; *M. K. & T.* v. *United States,* 231 U. S. 112; *Holden* v. *Hardy, supra; Mueller* v. *Ore.,* 208 U. S. 412; *Bosley* v. *McLaughlin,* 236 U. S. 385; *Miller* v. *Wilson,* 236 U. S. 373; *Riley* v. *Mass.,* 232 U. S. 671; *Atkin* v. *Kansas,* 191 U. S. 207; *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400; *New York Cent. Ry. Co.* v. *White,* 243 U. S. 188; *New York Cent. Ry. Co.* v. *Bianc,* 250 U. S. 596. See, also, *Central Lumber Co.* v. *South Dakota,* 226 U. S. 157; *Middleton* v. *Texas Power & Light Co.,* 249 U. S. 152; *German Alliance Ins. Co.* v. *Lewis,* 233 U. S. 389; *Na-*

*tional Safety Deposit Co. v. Stead,* 232 U. S. 58; *Manigault* v. *Springs,* 199 U. S. 472; *Grand Trunk W. R. R. Co.* v. *R. R. Comm'rs. of Indiana,* 221 U. S. 400. The act is not invalid because it operates only when there is a controversy. *Miller* v. *Wilson,* 236 U. S. 373. The claim of confiscation is not well founded. The fact that an industry is doing business at a loss cannot defeat a proper exercise of the police power. In all cases where an exercise of the police power was challenged, and the point of the loss to the individual has been raised, it has been decided adversely to such contention (except in price-fixing cases). *Mugler* v. *Kansas,* 123 U. S. 623; *California Reduction Co.* v. *Sanitary Reduction Works,* 199 U. S. 306; *Hadacheck* v. *Sebastian,* 239 U. S. 394; *Hebe Co.* v. *Shaw,* 248 U. S. 297; *Atlantic Coast Line* v. *Goldsboro,* 232 U. S. 548.

The plaintiff in error has proven no operating loss due to limitation of the hours of labor of its employees. *Chicago & Grand Trunk Ry. Co.* v. *Wellman,* 143 U. S. 339. The burden was upon the Packing Company to establish that the order of the Industrial Court was confiscatory.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an original proceeding in mandamus in the Supreme Court of Kansas to compel the Wolff Packing Company to put into effect an order of a state agency, called the Court of Industrial Relations, determining a dispute respecting wages, hours of labor and working conditions in a slaughtering and packing plant owned and operated by the company. The order was made in a compulsory proceeding under a Kansas statute, called the Industrial Relations Act, c. 29, Laws 1920, Special Session, and consisted of 19 distinct paragraphs—some fixing wages, some fixing hours of labor and pay for overtime, and others prescribing working conditions. After a hear-

ing, the Supreme Court eliminated the paragraphs relating to working conditions, because made without the required notice, and awarded a peremptory writ of mandamus commanding obedience to the other paragraphs; 109 Kan. 629; 111 Kan. 501. That judgment was brought to this Court for review and was reversed with a direction that the case be remanded for further proceedings not inconsistent with the opinion rendered at the time. 262 U. S. 522. After receiving the mandate, the state court vacated its original judgment; eliminated the paragraphs relating to working conditions and those fixing wages; also eliminated from the paragraphs fixing hours of labor the clauses relating to pay for overtime; and awarded a peremptory writ of mandamus commanding obedience to what remained of the last paragraphs. 114 Kan. 304. On a rehearing, the court modified that judgment by awarding a peremptory writ of mandamus to compel obedience to the paragraphs fixing hours of labor, including the clauses relating to pay for overtime. 114 Kan. 487. The paragraphs to which obedience was thus finally commanded are as follows:

" 3. A basic working day of eight hours shall be observed in this industry; but a nine-hour day may be observed not to exceed two days in any one week without penalty: *Provided, however,* That if the working hours of the week shall exceed forty-eight in number, all over forty-eight shall be paid for at the rate of time and one-half: furthermore, in case a day in excess of the eight hour day shall be observed more than two days in any one week, all over eight hours, except for said two days in said week, shall be paid for at the rate of time and one-half, even though the working hours of the week may be forty-eight hours or fewer."

" 14. Workers paid by the week or day, if employed within the plant and not within the office or sales department, shall be subject to hours of work and overtime

as other employees under the terms of finding No. 3 hereof."

" 19. In departments operating twenty-four hours a day and seven days a week, each employee therein shall be entitled to one day off each week. In other departments work performed on Sunday and legal holidays sl. all be paid for at the rate of time and one-half."

The order, according to its terms, was to remain in force until changed by the Court of Industrial Relations or by agreement of the parties with the approval of that agency.

The company has brought the case here again—this time on two writs of error. One covers the judgment first entered after receipt of the mandate of this Court, and the other covers the judgment entered on the rehearing. The first of these writs can serve no purpose and must be dismissed. The rehearing was seasonably requested and the judgment entered thereon became the final judgment, the other being superseded by it.

Throughout the mandamus proceedings the company insisted that the Industrial Relations Act, on which the order was based, was in conflict with the provision of the Fourteenth Amendment that no State shall deprive any person of liberty or property without due process of law. This insistence was wholly rejected when the original judgment, heretofore reversed, was rendered, and was largely rejected when the judgment on the rehearing was given.

When the case was first before this Court the discussion at the bar and in the briefs chiefly related to the validity of the parts of the Act permitting the fixing of wages; and the opinion then delivered particularly dealt with that question, the ultimate conclusion, as expressed therein, being:

" We think the Industrial Court Act, in so far as it permits fixing of wages in plaintiff in error's packing

42684°—25——36

house, is in conflict with the Fourteenth Amendment and deprives it of its property and liberty of contract without due process of law."

That conclusion, without more, required a reversal of the judgment of the state court. The parts of the Act permitting the fixing of hours of labor were not specially dealt with, and were not affected by the decision, save as the reasons on which it proceeded might be applicable to them. The reversal was with a direction that the case be remanded for further proceedings not inconsistent with this Court's decision, and therefore the mandate operated particularly to require that the parts of the Act permitting the fixing of wages be regarded as invalid.

In the proceedings which followed the receipt of the mandate, the state court held that the other parts of the Act were separable from those permitting the fixing of wages, and also pronounced them constitutional. As the question of separability was a state question, the decision of that court thereon is conclusive here. *Dorchy* v. *Kansas,* 264 U. S. 286; *Hallanan* v. *Eureka Pipe Line Co.,* 261 U. S. 393, 397. The decision on the constitutional question is all that we can review.

Both parties rely on our decision when the case was first here. One insists that by reversing the original judgment of the state court, and not merely a part of it, we adjudged the invalidity of the entire Act; and the other that by particularly declaring the provisions permitting the fixing of wages invalid and saying nothing about the provisions permitting the fixing of hours of labor we impliedly held the latter valid. Both contentions are wrong. "A judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided," *Mutual Life Insurance Company* v. *Hill,* 193 U. S. 551, 553.

The company next contends that the decision, even though not in terms determining the question of the valid-

ity of the provisions permitting the fixing of hours of labor, recognized and gave effect to principles which are applicable to that question and if applied will solve it. A survey of the Act and of the decision will show that this contention is well taken.

The declared and adjudged purpose of the Act is to ensure continuity of operation and production in certain businesses which it calls "essential industries." To that end it provides for the compulsory settlement by a state agency of all labor controversies in such businesses which endanger the intended continuity. It proceeds on the assumption that the public has a paramount interest in the subject which justifies the compulsio.. The businesses named include, among others, that of manufacturing or preparing food products for sale and human consumption. The controversies to be settled include, among others, those arising between employer and employees over either wages or hours of labor. The state agency charged with the duty of making the settlement is the Court of Industrial Relations. Although called a court it is an administrative board. It is to summon the disputants before it, to give them a hearing, to settle the matter in controversy—as by fixing wages or hours of labor where they are what is in dispute—to embody its findings and determination in an order, and, if need be, to institute mandamus proceedings in the Supreme Court of the State to compel compliance with its order. The order is to continue in effect for such reasonable time as the agency may fix, or until changed by agreement of the parties with its approval. The employer may discontinue the business (a) where it can be conducted conformably to the order only at a loss, or (b) where for good cause shown the agency approves; and individual employees may quit the service in the exercise of a personal privilege, but may not induce others to quit or combine with them to do so. With these qualifications both employer

and employees are required to continue the business on the terms fixed in the order, violations and evasions being penalized. The authority given to the agency to fix wages or hours of labor is not general, nor is it to be exerted independently of the system of compulsory settlement. On the contrary, it is but a feature of that system and correspondingly limited in purpose and field of application. No distinction is made between wages and hours of labor; both are put on the same plane. In the fixing of wages regard is to be had for what is fair between employer and employees, and in the fixing of hours of labor regard is to be had for what are healthful periods; but neither is to be fixed save in the compulsory adjustment of an endangering controversy to the end that the business shall go on.

The following excerpt from the opinion of the Supreme Court of the State in *State ex rel.* v. *Howat*, 109 Kan. 376, 417, explains the pervading theory of the Act:

" Heretofore the industrial relationship has been tacitly regarded as existing between two members—industrial manager, and industrial worker. They have joined wholeheartedly in excluding others. The legislature proceeded on the theory there is a third member of those industrial relationships which have to do with production, preparation and distribution of the necessaries of life—the public. The legislature also proceeded on the theory the public is not a silent partner. When the dissensions of the other two become flagrant, the third member may see to it the business does not stop."

On three occasions when the Act was before us we referred to it as undertaking to establish a system of " compulsory arbitration." *Howat* v. *Kansas*, 258 U. S. 181, 184; *Wolff Packing Company* v. *Court of Industrial Relations*, 262 U. S. 522, 542; *Dorchy* v. *Kansas*, 264 U. S. 286, 288. The Supreme Court of the State in a recent opinion criticizes this use of the term " arbitration."

*State* v. *Howat,* 116 Kan. 412, 415. We recognize that in its usual acceptation the term indicates a proceeding based entirely on the consent of the parties. And we recognize also that this Act dispenses with their consent. Under it they have no voice in selecting the determining agency or in defining what that agency is to investigate and determine. And yet the determination is to bind them even to the point of preventing them from agreeing on any change in the terms fixed therein, unless the agency approves. To speak of a proceeding with such attributes merely as an arbitration might be subject to criticism, but we think its nature is fairly reflected when it is spoken of as a compulsory arbitration. Of course, our present concern is with the essence of the system rather than its name. In this connection it is well to observe that in the opinion last mentioned the state court recognizes that the system, while intended to be just between employer and employees, proceeds on the theory that the public interest is paramount, as was explained in *State ex rel.* v. *Howat, supra.*

The survey just made of the Act, as construed and applied in the decisions of the Supreme Court of the State, shows very plainly that its purpose is not to regulate wages or hours of labor either generally or in particular classes of business, but to authorize the state agency to fix them where, and in so far as, they are the subjects of a controversy the settlement of which is directed in the interest of the public. In short, the authority to fix them is intended to be merely a part of the system of compulsory arbitration and to be exerted in attaining its object, which is continunity of operation and production.

When the case was first here the question chiefly agitated, and therefore discussed and decided, was whether the authority to fix wages as an incident of the compulsory arbitration could be applied to a business like that of the Wolff Company consistently with the protec-

tion which the due process of law clause of the Fourteenth
Amendment affords to the liberty of contract and rights
of property. The question was answered in the negative
and the Act was held invalid in so far as it gives that
authority. The subject was much considered and the
principles which were recognized and applied were dis-
tinctly stated.

At the outset the Court pointed out that the Act as-
sumes as a " necessary postulate " that the State, in the
interest of the public, " may compel those engaged in the
manufacture of food and clothing, and the production of
fuel, whether owners or workers, to continue in their
business or employment on terms fixed by an agency of
the State if they cannot agree." Then, after referring to
the limited privilege of withdrawing from the business or
employment which the Act accords to owners and em-
ployees who may be dissatisfied with the determination,
the Court said [534]:

" These qualifications do not change the essence of the
act. It curtails the right of the employer on the one hand,
and of the employee on the other, to contract about his
affairs. This is part of the liberty of the individual pro-
tected by the guarantee of the due process clause of the
Fourteenth Amendment. *Meyer* v. *Nebraska, ante,* 390.
While there is no such thing as absolute freedom of con-
tract and it is subject to a variety of restraints, they must
not be arbitrary or unreasonable. Freedom is the general
rule, and restraint the exception. The legislative au-
thority to abridge can be justified only by exceptional cir-
cumstances. *Adkins* v. *Children's Hospital,* 261 U. S.
525."

Various matters which were relied on as justifying the
attempted restraint or abridgement were considered and
pronounced inadequate. Among them was the assump-
tion in the Act that a business like that in question—pre-
paring food for sale and human consumption—is so far

affected with a public interest that the State may compel its continuance, and, if the owner and employees cannot agree, may fix the terms through a public agency to the end that there shall be continuity of operation and production. This assumption was held to be without any sound basis and its indulgence by the state legislature was declared not controlling. The court recognized that, in a sense, all business is of some concern to the public and subject to some measure of regulation, but made it plain that the extent to which regulation reasonably may go varies greatly with different classes of business and is not a matter of legislative discretion solely, but is a judicial question to be determined with due regard to the rights of the owner and employees. Care was taken to point out that operating a railroad, keeping an inn, conducting an elevator and following a common calling are not all in the same class/ and particularly to point out the distinctions between a quasi-public business conducted under a public grant imposing a correlative duty to operate, a business originally private which comes to be affected with a public interest through a change *in pais*, and a business which not only was private in the beginning but has remained such. The conclusion was that power to compel the continuance of a business because affected with a public interest is altogether exceptional. On this subject the Court said:

" An ordinary producer, manufacturer or shopkeeper may sell or not sell as he likes, *United States* v. *Trans-Missouri Freight Association*, 166 U. S. 290, 320; *Terminal Taxicab Co.* v. *District of Columbia*, 241 U. S. 252, 256, and while this feature does not necessarily exclude businesses from the class clothed with a public interest, *German Alliance Insurance Co.* v. *Lewis*, 233 U. S. 389, it usually distinguishes private from quasi-public occupations."

" It involves a more drastic exercise of control to impose limitations of continuity growing out of the public

character of the business upon the employee than upon the employer; and without saying that such limitations upon both may not be sometimes justified, it must be where the obligation to the public of continuous service is direct, clear and mandatory and arises as a contractual condition express or implied of entering the business either as owner or worker. It can only arise when investment by the owner and entering the employment by the worker create a conventional relation to the public somewhat equivalent to the appointment of officers and the enlistment of soldiers and sailors in military service."

" The penalties of the act are directed against effort of either side to interfere with the settlement by arbitration. Without this joint compulsion, the whole theory and purpose of the act would fail. The State cannot be heard to say, therefore, that upon complaint of the employer, the effect upon the employee should not be a factor in our judgment."

" The power of a legislature to compel continuity in a business can only arise where the obligation of continued service by the owner and its employees is direct and is assumed when the business is entered upon. A common carrier which accepts a railroad franchise is not free to withdraw the use of that which it has granted to the public. It is true that if operation is impossible without continuous loss, *Brooks-Scanlon Co.* v. *Railroad Commission,* 251 U. S. 396; *Bullock* v. *Railroad Commission,* 254 U. S. 513, it may give up its franchise and enterprise, but short of this, it must continue. Not so the owner [in another field] when by mere changed conditions his business becomes clothed with a public interest. He may stop at will whether the business be losing or profitable."

Applying these principles, the Court was of opinion that the business in question is one which the State is without power to compel the owner and employees to continue.

On further reflection we regard the principles so stated and applied as entirely sound. They are as applicable now as they were then. The business is the same and the parties are the same. So, we reach the same conclusion now that we reached then.

The system of compulsory arbitration which the Act establishes is intended to compel, and if sustained will compel, the owner and employees to continue the business on terms which are not of their making. It will constrain them not merely to respect the terms if they continue the business, but will constrain them to continue the business on those terms. True, the terms have some qualifications, but as shown in the prior decision the qualifications are rather illusory and do not subtract much from the duty imposed. Such a system infringes the liberty of contract and rights of property guaranteed. by the due process of law clause of the Fourteenth Amendment. " The established doctrine is that this liberty may not be interfered with, under the guise of protecting the public interest, by legislative action which is arbitrary or without reasonable relation to some purpose within the competency of the State to effect." *Meyer* v. *Nebraska,* 262 U. S. 390, 399.

The authority which the Act gives respecting the fixing of hours of labor is merely a feature of the system of compulsory arbitration and has no separate purpose. It was exerted by the state agency as a part of that system and the state court sustained its exertion as such. As a part of the system it shares the invalidity of the whole. Whether it would be valid had it been conferred independently of the system and made either general or applicable to all businesses of a particular class we need not consider, for that was not done.

It follows that the state court should have declined to give effect to any part of the order of the state agency.

*No. 207.   Writ of error dismissed.*

*No. 29S,   Judgment reversed.*