**BEMIS BRO. BAG CO. v. FEIDELSON.**
Regional Director, et al.

District Court, W. D. Tennessee

Jan. 23, 1936.

Frank Y. Gladney, of St. Louis, Mo., and S. J. Everett, of Jackson, Tenn., Jones, Hocker, Gladney & Jones, and Spencer Thomas, all of St. Louis, Mo., for complainant.

MARTIN, District Judge.

On January 22, 1936, Bemis Bro. Bag Company filed in this court its bill of complaint against the parties listed in the above caption, praying injunctive relief against the defendants named from prosecution before the National Labor Relations Board of a complaint made by Local No. 1838, United Textile Workers of America, against the Bemis Bros. Bag Company.

The bill also prays an injunction restraining enforcement against complainant of the National Labor Relations Act, chapter 372, Statutes of United States of America, passed at the First Session of the Seventy-Fourth Congress, 1935, approved July 5, 1935; to be cited as the National Labor Relations Act (29 U.S.C.A. § 151 et seq.).

It is sought to restrain the defendants "from examining or attempting to examine the books, records or documents of com-

plainant relating to the employment or discharge of any employee or in connection with the designation or selection of representatives of complainant's employees; from compelling or attempting to require the attendance of complainant's employees or of witnesses or to compel the production of complainant's books, records or documents before any member or agent of the National Labor Relations Board; from taking a ballot of complainant's employees or from interfering or attempting to interfere with the conduct of complainant's manufacturing business or of the relations between complainant and its employees."

The bill prays, also, that, pursuant to the Federal Declaratory Judgment Act (28 U.S.C.A. § 400), the court decree the said National Labor Relations Act unconstitutional, void, and unenforceable in entirety.

Complainant charges that the National Labor Relations Act is void, because the act (1) attempts to regulate matters not within the powers of Congress, in violation of the Tenth Amendment; (2) deprives complainant and its employees of liberty without due process of law, in violation of the Fifth Amendment; (3) deprives complainant of its property without due process of law, in violation of the Fifth Amendment; (4) attempts unconstitutional delegation of judicial power to an administrative body; (5) violates the Seventh Amendment in depriving complainant of its right to trial by jury, in providing for the awarding of unearned wages to discharged employees; (6) regardless of its validity or invalidity with respect to interstate commerce, it cannot be applied to complainant's cotton mill operations at Bemis, Tenn., for the reason that such operations constitute "a purely local and intrastate transaction, initiated and completed within the state of Tennessee."

It appears from the bill that notice, dated January 14, 1936, and signed by the Regional Director of the National Labor Relations Board for the Tenth Region, has been served on Bemis Bro. Bag Company, of a hearing to be held on January 23, 1936, conducted by a trial examiner before the National Labor Relations Board in the Federal Building at Jackson, Tenn.

The bill exhibits a copy of the complaint issued January 14, 1936, by the National Labor Relations Board, on charges laid against Bemis Bro. Bag Company by Local 1838, United Textile Workers of America. Copy of the answer of Bemis Bros. Bag Company to said complaint is also exhibited.

Immediately upon filing the bill of complaint in this cause, the attorneys of record for Bemis Bro. Bag Company made application in open court for the issuance, forthwith, of a stay order, restraining all procedure and hearing before the National Labor Relations Board on the day following the application, at the time designated in the aforesaid notice of said hearing. Upon conclusion of extensive argument upon this ex parte application for a stay order, the court took said application under advisement; but, after study late into the night of the questions presented and the authorities cited, is compelled to render immediate decision in time to act by 9:30 a. m., following conclusion of oral argument at 5 o'clock p. m.

■ It would be utterly inconsistent with the firm principle held by this court to invade the powers of the Legislative and Executive Departments of the national government, by staying the proceedings of an important executive board established by act of Congress, except upon a conclusion reached by the court that such act is unconstitutional beyond the shadow of a doubt.

This court adheres to its view expressed in La Croix v. United States, 11 F.Supp. 817, 820, in the following language: "It is the judgment of this court that, before pronouncing an act of Congress unconstitutional and unenforceable, a District Court should be even more carefully deliberate and firmly convinced beyond a reasonable doubt of its unconstitutionality than would be necessary on the part of a Circuit Court of Appeals or of the Supreme Court of the United States. A District Court is a one-man court. There are numerous District Courts; and the result of conflicting views of individual District Judges as to the unconstitutionality of acts of Congress leads to a frequently confusing status in the enforceability of national laws. Wherefore District Courts should be most reluctant to pronounce acts of Congress void. The soundest public policy is conserved when District Courts do not interfere with the operation of acts of Congress. Pending the final decision of the Supreme Court of the United States, nullification of laws in some districts and their enforcement in

other districts leads to much confusion and inequality."

For example, this court respectfully states its utter divergence of view, in construing the act under consideration, from the reasoning and conclusions of the United States District Judge, Missouri, in Stout v. Pratt, Regional Director, 12 F. Supp. 864, decided December 21, 1935. This court could never concur with the view there expressed, that the benevolent policy of Congress, as stated in the first section of the National Labor Relations Act (29 U.S.C.A. § 151), is subject to the criticism of the distinguished Missouri judge: "The individual employee is dealt with by the act as an incompetent. The government must protect him even from himself. He is the ward of the United States to be cared for by his guardian even as if he were a member of an uncivilized tribe of Indians or a recently emancipated slave."

This court prefers to concede the clear right of the Congress of the United States, within its constitutional authority, to declare its legislative policy in its own words: "It is hereby declared to be the policy of the United States to eliminate the causes of certain substantial obstructions to the free flow of commerce and to mitigate and eliminate these obstructions when they have occurred by encouraging the practice and procedure of collective bargaining and by protecting the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing, for the purpose of negotiating the terms and conditions of their employment or other mutual aid or protection."

And:

"The inequality of bargaining power between employees who do not possess full freedom of association or actual liberty of contract, and employers who are organized in the corporate or other forms of ownership association substantially burdens and affects the flow of commerce, and tends to aggravate recurrent business depressions, by depressing wage rates and the purchasing power of wage earners in industry and by preventing the stabilization of competitive wage rates and working conditions within and between industries.

"Experience has proved that protection by law of the right of employees to organize and bargain collectively safeguards commerce from injury, impairment, or interruption, and promotes the flow of commerce by removing certain recognized sources of industrial strife and unrest, by encouraging practices fundamental to the friendly adjustment of industrial disputes arising out of differences as to wages, hours, or other working conditions, and by restoring equality of bargaining power between employers and employees."

■■ Every provision of the National Labor Relations Act is consistent with the declared policy of Congress. With the policy of acts of Congress, the courts have no concern. No principle seems better settled in the decisions of the Supreme Court of the United States.

In the recent case of United States of America v. Wm. M. Butler et al., Receiver of Hoosac Mills Corp., 56 S.Ct. 312, 318, 80 L.Ed. ——, decided January 6, 1936, the court, speaking through Mr. Justice Roberts, said: "This court neither approves nor condemns any legislative policy. Its delicate and difficult office is to ascertain and declare whether the legislation is in accordance with, or in contravention of, the provisions of the Constitution; and, having done that, its duty ends."

In Nicol v. Ames, 173 U.S. 509, 514, 19 S.Ct. 522, 525, 43 L.Ed. 786, the court said: "It is always an exceedingly grave and delicate duty to decide upon the constitutionality of an act of the congress of the United States. The presumption, as has frequently been said, is in favor of the validity of the act; and it is only when the question is free from any reasonable doubt that the court should hold an act of the lawmaking power of the nation to be in violation of that fundamental instrument upon which all the powers of the government rest."

■ Could language make clearer the duty of a District Court of the United States to resolve every intendment in favor of the constitutionality of an act of Congress, before striking down its operation and effect, than the restriction placed by the highest court in the land upon itself, in Fairbank v. United States, 181 U.S. 283, 287, 288, 21 S.Ct. 648, 650, 45 L.Ed. 862? The Supreme Court said:

"We proceed upon the rule, often expressed in this court, that an act of Congress is to be accepted as constitutional unless on examination it clearly appears to be in conflict with provisions of the Federal Constitution.

"In the light of this rule the inquiry naturally is, Upon what principles and in what spirit should the provisions of the Federal Constitution be construed? There are in that instrument grants of power, prohibitions, and a general reservation of ungranted powers. That in the grant of powers there was no purpose to bind governmental action by the restrictive force of a code of criminal procedure has been again and again asserted. The words expressing the various grants in the Constitution are words of general import, and they are to be construed as such, and as granting to the full extent the powers named. Further, by the last clause of § 8, art. 1, Congress is authorized 'to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof.' This, construed on the same principles, vests in Congress a wide range of discretion as to the means by which the powers granted are to be carried into execution. This matter was at an early day presented to this court, and it was affirmed that there could be no narrow and technical limitation or construction; that the instrument should be taken as a constitution. In the course of the opinion the chief justice said:

" 'The subject is the execution of those great powers on which the welfare of a nation essentially depends. It must have been the intention of those who gave these powers to insure, as far as human prudence could insure, their beneficial execution. This could not be done by confining the choice of means to such narrow limits as not to leave it in the power of Congress to adopt any which might be appropriate and which were conducive to the end. This provision is made in a Constitution intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs. To have prescribed the means by which government should, in all future time, execute its powers, would have been to change entirely the character of the instrument, and give it the properties of a legal code. It would have been an unwise attempt to provide, by immutable rules, for exigencies which, if foreseen at all, must have been seen dimly, and which can be best provided for as they occur. To have declared that the best means shall not be used, but those alone without which the power given would be nugatory, would have been to deprive the legislature of the capacity to avail itself of experience, to exercise its reason, and to accommodate its legislation to circumstances.' McCulloch v. Maryland, 4 Wheat. 316, 415, 4 L.Ed. 579, 603.

"And thereafter, in language which has become axiomatic in constitutional construction ([4 Wheat. 316] page 421 [4 L. Ed. 579] 605)—

" 'We admit, as all must admit, that the powers of the government are limited, and that its limits are not to be transcended. But we think the sound construction of the Constitution must allow to the national legislature that discretion with respect to the means by which the powers it confers are to be carried into execution, which will enable that body to perform the high duties assigned to it, in the manner most beneficial to the people. Let the end be legitimate, let it be within the scope of the Constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consist with the letter and spirit of the Constitution, are constitutional.' "

Now, in the light of these settled principles, let the National Labor Relations Act be examined briefly to determine whether it is the manifest duty of a United States District Court to strike it down.

The complainant charges that the act violates the Seventh Amendment, which provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

It is contended that, in section 10 (c) of the act (29 U.S.C.A. § 160 (c), following a procedure under section 10 (b) of the act (29 U.S.C.A. § 160 (b), in which "the rules of evidence prevailing in courts of law or equity shall not be controlling," the right is vested in the National Labor Relations Board not only to issue an order restraining unfair labor practice as defined, but "to take such affirmative action, including reinstatement of employees *with* or without *back pay,* as will effectuate the policies of this Act [chapter]." The argument made is that an administrative board is given power to award a judgment for back pay in denial of the right to a trial by jury.

The answer is that the judgment of the board is not final; but the right is granted in section 10 (f) of the act (29 U.S.C.A. § 160 (f), to "any person aggrieved by a final order of the Board" to obtain a review of such order in Circuit Courts of Appeal; in which proceeding, additional evidence may be adduced and a decree entered enforcing, modifying, "or setting aside in whole or in part the order of the Board." Having thus obtained jurisdiction to review the action of the board in awarding a judgment to the employee for back pay, the court could properly hold such judgment a nullity, thereby forcing the employee, in order to recover back pay, to sue the employer in an action at law in which the defendant could demand and receive the benefit of a trial by jury, as guaranteed by the Seventh Amendment.

■ Whatever is reasonably appropriate and relevant to the exercise of a granted power is to be considered as accompanying the grant. Marshall v. Gordon, 243 U.S. 521, 37 S.Ct. 448, 61 L.Ed. 881, L.R.A. 1917F, 279, Ann.Cas.1918B, 371.

"An award not supported by evidence in the record is not in accordance with law. But the fact that the deputy commissioner is not bound by the rules of evidence which would be applicable to trials in court or by technical rules of procedure * * * does not invalidate the proceeding, provided substantial rights of the parties are not infringed." Crowell v. Benson, 285 U.S. 22, 48, 52 S.Ct. 285, 291, 76 L.Ed. 598. Citing Interstate Commerce Comm. v. Baird, 194 U.S. 25, 44, 24 S.Ct. 563, 48 L.Ed. 860; Interstate Commerce Comm. v. L. & N. R. Co., 227 U.S. 88, 93, 33 S.Ct. 185, 57 L.Ed. 431; United States v. Abilene & Southern Ry. Co., 265 U.S. 274, 288, 44 S.Ct. 565, 68 L.Ed. 1016; Tagg Bros. & Moorhead v. United States, 280 U.S. 420, 442, 50 S.Ct. 220, 74 L.Ed. 524.

Certainly it would seem that no substantial rights of the parties are infringed, where the United States courts are given full power of review of the decisions and awards of the National Labor Relations Board.

In support of their argument that the act under examination violates the Tenth Amendment, as well as the Fifth, counsel for complainant cite Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. The distinction is that, under the Longshoremen's and Harbor Workers' Compensation Act (33 U.S.C.A. §§ 901–950), the determination of the administrative agency set up was made *final* upon the facts found, while the National Labor Relations Act provides an appeal to the courts, as demonstrated above.

The opinion of Chief Justice Hughes in the case relied upon by complainant is illuminative of an appropriate liberality of interpretation properly applicable to the case at bar. The Chief Justice said: "We think that this requirement clearly evidences the intention of the Congress, not only that an express provision found to be unconstitutional should be disregarded without disturbing the remainder of the statute, but also that any implication from the terms of the act which would render them invalid should not be indulged." 285 U.S. 22, 63, 52 S.Ct. 285, 297, 76 L.Ed. 598.

And again: "When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided."

See, also, Panama R. Co. v. Johnson, 264 U.S. 375, at page 90, 44 S.Ct. 391, 68 L.Ed. 748; Missouri Pac. R. Co. v. Boone, 270 U.S. 466, 472, 46 S.Ct. 341, 70 L.Ed. 688; Richmond Screw Anchor Co. v. U. S., 275 U.S. 331, 346, 48 S.Ct. 194, 72 L.Ed. 303; Blodgett v. Holden, 275 U.S. 142, 148, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Lucas v. Alexander, 279 U.S. 573, 577, 49 S.Ct. 426, 73 L. Ed. 851, 61 A.L.R. 906.

Nothing is found in Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A.L.R. 947, supporting the unconstitutionality of the act under consideration; for the court held that Congress has no power to regulate wages and hours of labor in a local business.

Casting more light upon the interstate commerce question involved in this case are the decisions of the Supreme Court in the labor cases: Coronado Coal Co. v. United Mine Workers, 268 U.S. 295, 45 S. Ct. 551, 69 L.Ed. 963; Duplex Printing Press Co. v. Deering, 254 U.S. 443, 41 S. Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; American Steel Foundries v. Tri-City Central Trades Council, 257 U.S. 184, 42 S. Ct. 72, 66 L.Ed. 189, 27 A.L.R. 360; Bedford Cut Stone Co. v. Journeyman Stone

Cutters' Ass'n, 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791.

■ Certainly a careful consideration of these decisions impels the conclusion that it cannot be predicted safely that the Supreme Court of the United States would hold the provisions of the National Labor Relations Act beyond the scope of the interstate commerce clause of the Federal Constitution. It is not without logic to urge, in causal connection, that employees may strike as a result of the refusal of their employer to bargain with them collectively through representatives of their own choosing; that production will be curtailed by such strikes, the result whereof would be a burden upon interstate commerce in lessening interstate shipments.

The heaviest artillery of the complainant is fired upon the National Labor Relations Act from the citadel of the Fifth Amendment. It is charged that the act deprives the employer of both liberty and property, without due process of law. Counsel cite three leading decisions in support of their position: Adair v. United States, 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436, 13 Ann.Cas. 764; Coppage v. State of Kansas, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441, L.R.A.1915C, 960; Wolff Packing Co. v. Court of Industrial Relations of State of Kansas, 267 U.S. 552, 45 S.Ct. 441, 69 L.Ed. 785.

The first-cited case, Adair v. United States, supra, does not seem controlling on the issue here. At the conclusion of the opinion the court said, 208 U.S. 161, page 180, 28 S.Ct. 277, 283, 52 L.Ed. 436, 13 Ann.Cas. 764: "This decision is therefore restricted to the question of the validity of the particular provision in the act of Congress making it a crime against the United States for an agent or officer of an interstate carrier to discharge an employee from its service because of his being a member of a labor organization."

■ Section 12 of the National Labor Relations Act (29 U.S.C.A. § 162) is not construed as making it a crime against the United States for an employer to discharge an employee. The said section merely provides: "Any person who shall willfully resist, prevent, impede, or interfere with any member of the Board or any of its agents or agencies in the performance of duties pursuant to this Act [chapter] shall be punished by a fine of not more than $5,000 or by imprisonment for not more than one year, or both."

The gravamen of Coppage v. State of Kansas, supra, as urged by complainant, will be found at page 26 of 236 U.S., 35 S.Ct. 240, 248: "Upon both principle and authority, therefore, we are constrained to hold that the Kansas act of March 13, 1903, as construed and applied so as to punish with fine or imprisonment an employer or his agent for merely prescribing, as a condition upon which one may secure employment under or remain in the service of such employer, that the employee shall enter into an agreement not to become or remain a member of any labor organization while so employed, is repugnant to the 'due process' clause of the 14th Amendment, and therefore void."

It would seem that the voice of this decision is so faint in any distinct applicability to the challenged act as not to be heard as an authority for striking it down. It is important to note, however, that three of the justices dissented, including the present Chief Justice of the United States, who said: "The legislature is, in the first instance, the judge of what is necessary for the public welfare, and a judicial review of its judgment is limited. The earnest conflict of serious opinion does not suffice to bring it within the range of judicial cognizance. C., B. & Q. R. Co. v. McGuire, 219 U.S. 549, 565, 31 S.Ct. 259, 55 L.Ed. 328, 337; German Alliance Ins. Co. v. Lewis, 233 U.S. 389, 34 S.Ct. 612, 58 L.Ed. 1011 [L.R.A.1915C, 1189]. [Quotation from Erie R. R. v. Williams, 233 U.S. 685, 699, 34 S.Ct. 761, 58 L.Ed. 1155, 51 L.R.A.(N.S.) 1097]. It is therefore the thoroughly established doctrine of this court that liberty of contract may be circumscribed in the interest of the state and the welfare of its people. Whether a given exercise of such authority transcends the limits of legislative authority must be determined in each case as it arises."

Counsel for complainant point out that while Coppage v. State of Kansas, supra, invoked the due process clause of the Fourteenth Amendment, which applies only to a state, it has been held in Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 76 L.Ed. 772, that the restraint imposed upon legislation by the due process clauses of the Fifth and Fourteenth Amendments is the same. It will be noted that in the latter case cited by complainant's counsel, Mr. Justice Stone and Mr. Justice Brandeis dissented, and Mr. Justice Cardozo took no part in the consideration or decision of the case.

Wolff Packing Co. v. Court of Industrial Relations of State of Kansas, 267 U.S. 552, page 565, 45 S.Ct. 441, 444, 69 L.Ed. 785, holding the Kansas Industrial Relations Act unconstitutional, seems not controlling of the issue at bar, for the reason that the court said: "The survey just made of the act, as construed and applied in the decisions of the Supreme Court of the state, shows very plainly that its purpose is not to regulate wages or hours of labor either generally or in particular classes of business, but to authorize the state agency to fix them where, and in so far as, they are the subjects of a controversy the settlement of which is directed in the interest of the public. In short, the authority to fix them is intended to be merely a part of the system of compulsory arbitration and to be exerted in attaining its object, which is continuity of operation and production."

The court concluded the opinion by saying (267 U.S. 552, 569, 45 S.Ct. 441, 445, 69 L.Ed. 785): "Whether it would be valid had it been conferred independently of the system and made either general or applicable to all businesses of a particular class we need not consider, for that was not done."

As illustrative of the reasonable doubt of the probable holding of the Supreme Court of the United States upon the issue of the constitutionality of the National Labor Relations Act, it is noteworthy to observe that one or more of four of the present Justices of the Supreme Court of the United States dissented from the decisions of the majority in three leading cases cited by counsel for complainant. Mr. Justice Hughes dissented in Coppage v. State of Kansas, supra; Mr. Justice Roberts, Mr. Justice Stone, and Mr. Justice Brandeis, in the case of Crowell v. Benson; and Mr. Justice Stone and Mr. Justice Brandeis, in Heiner v. Donnan, supra. In this case, Mr. Justice Cardozo took no part in the consideration or decision of the case.

The last-mentioned distinguished jurist has frequently delivered opinions demonstrating the liberality of his interpretation in upholding acts of Congress. Is not this cogent argument sustaining the basis of the decision of this court in holding the firm principle that an inferior court of the United States should not strike down an act of Congress, unless convinced beyond a shadow of doubt that the act is unconstitutional?

Accordingly, the application for a stay order is denied.