## EL ESTERO.

(District Court, S. D. Texas, at Galveston. July 21, 1926.)

### No. 1277.

1. Seamen ⊛33—Seamen held entitled to discharge and wages for violation of ship by statute requiring division into watches (Seamen's Act 1915, § 2 [Comp. St. § 8363b]).

A vessel cannot avoid compliance with Seamen's Act 1915, § 2 (Comp. St. § 8363b), requiring division of the crew into watches, to be kept on duty successively, by obtaining a certificate from local inspectors stating that she required only a certain number of seamen for her navigation, and assigning all above that number to day work only, and not including them in the watches.

2. Seamen ⊛33—Immaterial that seaman, entitled to discharge, wages, and penalty for violation of statute by vessel, did not assign that as reason for leaving the ship.

It is immaterial that a seaman, entitled to discharge, wages, and penalty for violation of statute by the vessel, did not assign such violation as his reason for leaving the ship.

In Admiralty. Suit by Fred Hair and another against the American Steamship El Estero. Decree for libelants.

W. E. Price, of Galveston, Tex., for libelants.

W. T. Armstrong and W. E. Cranford, both of Galveston, Tex., for respondent.

HUTCHESON, District Judge. [1] This is a suit for wages, brought by two seamen to recover their wages and the statutory penalty for nonpayment under section 2, Seamen's Act 1915 (Comp. St. § 8363b). Justifying, respondent replies that it offered the seamen half wages at the port of Galveston, but that the seamen without right demanded full wages, and upon refusal quit, and are therefore not entitled to recover.

The seamen invoke W. O'Hara v. Lucken-

bach Steamship Co., 46 S. Ct. 157, 70 L. Ed. 313, construing the act invoked by them. Respondent seeks to avoid the force of that decision by the claim that, in accordance with the certificate of the local inspectors, the steamship El Estero was required to carry only six seamen, four able seamen and two seamen; that while, in addition to the required crew, they did have other seamen, these additional men were needed for and set to do the necessary work of keeping the ship in proper shape, painting, cleaning, etc.; that they were not needed for navigation; that they were not taken on as sailors, and were never at any time employed about the ship for such purpose; that, if these additional men had been divided into watches, the ship would have been deprived of their services in the work of keeping the deck of the ship in condition, etc. In other words, the captain says, he would have lost their labor, and, if he could not have worked them in the daytime for the purpose for which he employed them, he would not have employed them at all, for the full services of the additional men were required in keeping the ship up.

In short, the respondent's position is, if the ship can satisfy the local inspectors as to her navigation requirements, she may employ as many additional seamen as she wants, without any of them having the protection of that part of the act providing for their division into watches. I think this position unsound, both as contrary to the letter and the spirit of the act. The only distinction between this case and O'Hara's, where the seven sailors kept at day work only were held to be entitled to their discharge, because not divided into watches, is the matter of this certificate. It will certainly not do to say that, by a device as transparent as this, the provision for watches may be nullified, unless in the law which provided for a certificate of inspection there is expressed or implied a limitation of the operation of the act under consideration. This I cannot find.

[2] Respondent also asserts that at least the libelants should not recover double wages, because, as is shown by the only testimony in the case, that of the master, the libelants did not assign as their reason for leaving the ship the violation of the law, but assigned a different reason, their desire to ship to England. I do not think this position sound; for, if it be taken for true that the seamen, when they quit, did not state as a ground for quitting the violation of the law, that would not avail him, for it is the violation of the law, and not the claim of its violation, that gives the sailors a right to their discharge and their wages. Besides, it is plain here that the master not only failed to comply with the section, but that he deliberately undertook to defeat it. Having done so, even though under a mistake of law, he must abide the consequences of his mistake.

I therefore conclude that a decree should go for libelants for their month's wages, and for double wages as penalty, to the date of this trial.[1]

---

[1] The statute invoked by libelant is as follows: "Sec. 2. That in all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, bays, or sounds exclusively, the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel. The seamen shall not be shipped to work alternately in the fireroom and on deck, nor shall those shipped for deck duty be required to work in the fireroom, or vice versa; but these provisions shall not limit either the authority of the master or other officer or the obedience of the seamen when, in the judgment of the master or other officer, the whole or any part of the crew are needed for the maneuvering of the vessel or the performance of work necessary for the safety of the vessel or her cargo, or for the saving of life aboard other vessels in jeopardy, or when in port or at sea from requiring the whole or any part of the crew to participate in the performance of fire, lifeboat, and other drills. While such vessel is in a safe harbor no seaman shall be required to do any unnecessary work on Sundays or the following named days: New Year's Day, the Fourth of July, Labor Day, Thanksgiving Day, and Christmas Day, but this shall not prevent the dispatch of a vessel on regular schedule or when ready to proceed on her voyage. And at all times while such vessel is in a safe harbor, nine hours, inclusive of the anchor watch, shall constitute a day's work. Whenever the master of any vessel shall fail to comply with this section, the seamen shall be entitled to discharge from such vessel and to receive the wages earned. But this section shall not apply to fishing or whaling vessels, or yachts."