## THE AMERICAN SHIPPER.
## McCREA v. UNITED STATES.

District Court, S. D. New York.
July 26, 1932.

Rehearing Granted Aug. 30, 1932.

On Rehearing Feb. 10, 1933.

John M. Scoble, of New York City, for libelant.

George Z. Medalie, U. S. Atty., of New York City (Frederick H. Cunningham, of New York City, of counsel), for the United States.

KNOX, District Judge.

This action is brought by a seaman to recover wages claimed to be due him upon his arrival in London, England, on February 26, 1928. Furthermore, he asks for one month's additional wages, together with the amount of expenses allegedly incurred by him in securing transportation back to the United States, and also two days' pay for each day since the above-mentioned date.

Libelant was duly hired on or about February 15, 1928, to serve as a fireman on the vessel American Shipper on a voyage from New York to London and return, at wages of $65 per month. Upon the arrival of the ship in London, libelant demanded of the master his discharge from the vessel, the payment of the balance of wages standing to his credit, one month's additional pay, and that he be provided with adequate employment on board some other vessel back to New York, quoting the titles of section 2 of the Seamen's Act, and Revised Statutes, § 4583, as amended (46 US CA § 685). Seamen's Act, § 2 (38 Stat. 1164, 46 USCA § 673), provides in part: "In all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, bays, or sounds exclusively, the sailors shall, while at sea, be divided into at least two, and the firemen, oilers, and water tenders into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel."

In the case of O'Hara v. Luckenbach

Steamship Company, 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313, the Supreme Court of the United States held that under this section all the sailors of a vessel coming within the terms of the statute must be divided into watches as nearly equal to each other numerically as the whole number of sailors will permit, pointing out that the purpose of the enactment was to promote safety at sea rather than to regulate the working conditions of the men.

In the case at bar there was clearly a violation of the exact requirements of the statutes, as authoritatively interpreted by the Supreme Court. According to the testimony of respondent's own witness Captain Cumings, the thirteen seamen on the vessel were not as equally divided into watches as that number permitted. Instead, three seamen were placed on each of the three watches, and four men were used for day duty and were not on any watch. It further appears that three oilers were not placed on any watch, but were assigned to day duty. The firemen and water tenders, however, appear to have been equally divided into three watches.

Upon this state of facts, there is no doubt that libelant was "entitled to discharge from such vessel and to receive the wages earned." O'Hara v. Luckenbach Steamship Company, supra. The fact that the vessel carried more seamen than was required by its certificate of inspection did not relieve the ship from compliance with the requirements of the statute. The additional men should also have been divided into watches. Southern Pac. Co. v. Hair (C. C. A.) 24 F.(2d) 94, 95.

The acts of respondent in violating section 2 of the Seamen's Act gave libelant the right to demand his discharge and to receive the wages he had earned. O'Hara v. Luckenbach Steamship Company, supra; Southern Pac. Co. v. Hair, supra.

It does not seem to me, however, that libelant is entitled to an extra month's wages and the cost of his passage home by reason of the provisions of R. S. § 4583, as amended (46 USCA § 685). That section of the shipping law is as follows: "Whenever on the discharge of a seaman in a foreign country by a consular officer on his complaint that the voyage is continued contrary to agreement, or that the vessel is badly provisioned or unseaworthy, or against the officers for cruel treatment, it shall be the duty of the consul or consular agent to institute a proper inquiry into the matter, and, upon his being satisfied of the truth and justice of such complaint, he shall require the master to pay to such seaman one month's wages over and above the wages due at the time of discharge, and to provide him with adequate employment on board some other vessel, or provide him with a passage on board some other vessel bound to the port from which he was originally shipped, or to the most convenient port of entry in the United States, or to a port agreed to by the seaman."

The applicability of the terms of the statute just quoted to section 673, out of which libelant's cause of complaint arises, was a subject of consideration by the Acting Attorney General of the United States upon August 9, 1927. That official then advised the Secretary of Labor that the provisions of section 685 (being section 4583 of the Revised Statutes, as amended) relating to the payment of an extra month's wages to seamen discharged in a foreign country because "the voyage is continued contrary to agreement" are not to be applied to consuls in cases of complaint by seamen for violation of section 2 of the Seamen's Act of March 4, 1915 (46 USCA § 673). 35 Op. Attys. Gen. 292. General Farnum, who thus ruled, said, inter alia: "Finally, in drafting section 2 of the Seamen's Act of March 4, 1915, Congress specifically dealt with the consequences of the violation of the prohibited acts and provided that 'whenever the master of any vessel shall fail to comply with this section,' then, in that event, 'the seaman shall be entitled to discharge from such vessel *and to receive the wages earned.*' If Congress had intended this to be only a measure of partial relief in case of such violation, and had contemplated that a seaman would be granted the additional relief provided in section 4583 of the Revised Statutes as amended, it is difficult to understand why it was not so specifically provided. The fact that Congress omitted such a reference, and did clearly and expressly deal with the measure of relief to be accorded, clearly indicates that such relief was to be exclusive. * * * "

This view of the law is not binding on this court, but I conceive it to be correct, and shall adopt it as my own.

Finally, a determination must be made as to whether libelant, by virtue of section 3 of the Seamen's Act (46 USCA § 596), is entitled to two days' pay for each and every day during which payment of his wages has been delayed. The requirement of the law is that wages to which a seaman on a vessel making foreign voyages is entitled, shall be paid "within twenty-four hours after the car-

go has been discharged, or within four days after the seaman has been discharged, whichever first happens." If, in the absence of sufficient cause, such payment be not made, the master or owner of the vessel shall pay to the seaman a sum equal to two days pay for each and every day during which payment is delayed beyond the respective periods allowed by the statute.

In O'Hara v. Luckenbach Steamship Company (C. C. A.) 16 F.(2d) 681, 682, after stating that "the phrase 'without sufficient cause' " should be construed as equivalent to "without reasonable cause," the court held: "That the refusal to make payment [in the case before it] was based upon reasonable cause, and that it would be unjust to penalize the steamship company because it litigated the question." It should be noted that the interpretation of section 2 of the Seamen's Act was in doubt when the Luckenbach suit was brought. In Southern Pacific Company v. Hair, supra, however, libelant was allowed to recover double pay, because the section had then received a final interpretation. Judge Walker stated: "In view of the decision in the case of O'Hara v. Luckenbach S. S. Co., supra, we do not think that the fact that appellant in good faith desired to get its above considered contention judicially passed on constituted sufficient cause for the failure to pay appellees their earned wages."

■ For the same reason, respondent here cannot claim that the master's doubt as to the meaning of the statute constituted "sufficient cause" for his failure to pay libelant.

■ For other reasons, nevertheless, I believe libelant should not recover double pay for the entire period over which he claims he is entitled to receive the same. As appears from the proof, McCrea made his demand while the master was advancing money to members of the crew who were about to take shore leave. At that time the master declined to comply with the requests and demands of McCrea, but he asked libelant to meet him the next afternoon at the American Consulate.

No claim is made of any ill treatment either in respect of this request or upon account of events transpiring during the voyage over. On the morning following the request made of Captain Cumings, McCrea orally presented his demand at the American Consulate, but left the office without awaiting the captain's arrival. The next day he departed the ship without seeing the captain, although that officer testified to his presence on board each and every day the ship was in port. On the day succeeding libelant's abandonment of the vessel, his written complaint was received at the Consulate, as had been requested. A Vice Consul thereupon wrote McCrea that he was not entitled to his discharge, addressing the letter to the ship—the only address of libelant of which the Vice Consul had knowledge. Since McCrea had already left the vessel, he never received the letter.

These facts make it apparent that McCrea did not give the captain a reasonable time within which to consider his demand. The proof is productive of a strong inference that McCrea was not really desirous of favorable action upon his request for a discharge, and the payment of his wages. He wished, on the other hand, to make out a case against the vessel and her owner. In this connection, observation may be made that having regard for the responsibilities of a master as imposed by section 4576 of the Revised Statutes (46 USCA § 677), as well as by other provisions of law, it would be harsh and unreasonable to require him to make instantaneous decision upon questions of law raised by a seaman under pain of subjecting the owner of the vessel to onerous burdens, should it subsequently appear, as it does here, that the seaman's demand for discharge should have been granted. No such requirement is imposed by the statute. As previously stated, section 3 of the Shipping Act requires a master to pay every seaman his wages "within twenty-four hours after the cargo has been discharged, or *within four days* after the seaman has been discharged, whichever first happens." In the case at bar, libelant has not shown when the cargo was discharged. Consequently, assuming that within the statute libelant may be deemed to have received his discharge on the day upon which he demanded it, the captain still had four days within which to make payment.

In the light of the captain's request that McCrea meet him at the Consulate, and that the latter failed to do so, there, or at any other place, although the master was on board the ship every day the vessel lay at London, it is apparent that the captain was without opportunity to pay McCrea throughout the period within which he was entitled to reach a final decision. It follows that the master's failure to make payment to libelant was not "without sufficient cause," and, in consequence, libelant is not entitled to recover double pay from February 26, 1928. He should, however, receive double pay for the number of days that have intervened since this suit was begun, and the date of de-

cree to be made herein. The reason which justified the master in withholding libelant's pay in London had ceased when libelant returned to the United States and made formal demand for the money payable to him at the time of his protest to the captain of the vessel. The right of libelant to his pay, under the Luckenbach decision, was so obvious that the delay in making payment of this item since the libel was filed, cannot be said to have come about from a "sufficient cause."

### On Motion for Reargument.

In view of the decision in Corrigan v. United States (D. C.) 298 F. 610, which has now been brought to my attention for the first time, I will grant a rehearing in the above-entitled suit. Counsel for the parties may arrange a time for rehearing by communicating with my secretary.

### On Rehearing.

By memorandum opinion, dated August 30, 1932, a reargument of this case was granted. See, also, former opinion in this suit dated July 26, 1932. The question now before the court, and which was not raised upon the original argument, is whether libelant is entitled to recover double wages under Rev. St. § 4529, 46 USCA § 596, in a suit brought against the United States. Respondent objects to the imposition of this liability on the ground that, in the absence of consent which is said not to have been given, it cannot be subjected to a charge which is, or is in the nature of, a penalty.

Libelant contends that the statute does not impose a penalty, but merely provides for increased compensation to seamen in the event of an unjustifiable delay in the payment of their wages. In support of his position, libelant relies principally upon three cases decided by the Circuit Court of Appeals for the Ninth Circuit, viz.: Vincent v. United States, 272 F. 889, Gerber v. Spencer, 278 F. 886, and Buckley v. Oceanic S. S. Co., 5 F.(2d) 545, and upon the case of Cox v. Lykes Brothers, 237 N. Y. 376, 143 N. E. 226, 227, 1924 A. M. C. 656.

The decision in Vincent v. United States undoubtedly required the United States to pay double wages under Rev. St. § 4529. However, the point here raised seems not to have been litigated. If it was, the opinion of the court is silent upon the question. In fact, it is arguable that had the matter come up for discussion, the ruling might have gone against libelants. I say this for the reason that the court regarded the obligation to pay double wages as the imposition of a penalty upon the respondent.

In Gerber v. Spencer, it was held that seamen's claims for double pay under Rev. St. § 4529 (46 USCA § 596), were protected by a lien similar to that which will attach for ordinary wages. At page 889 of 278 F., the court said: "The purpose of the statute * * * is to secure to the seamen an amount as extra pay by way of compensation for delay. The extra pay is an incident to the claim of wages proper."

In Buckley v. Oceanic S. S. Co., it was held that a seaman's suit for double pay was a suit for wages, and not for a penalty. Therefore, it was governed by the two-year statute of limitations under section 339 of the California Code of Civil Procedure, rather than by United States Revised Statutes, section 1047 (28 USCA § 791), which permits suits to recover a penalty, accruing under the laws of the United States, to be commenced within five years after such accrual.

In Cox v. Lykes, the New York Court of Appeals, per Cardozo, J., held that a state court had jurisdiction to give judgment for double wages, because under Rev. St. 4529 (46 USCA § 596), they constituted wages and were not a penalty within the meaning of section 256 of the Judicial Code (28 USCA § 371), which confers upon the federal courts exclusive jurisdiction "of all suits for penalties and forfeitures incurred under the laws of the United States."

As opposed to these cases, respondent places chief reliance upon the decision of the Supreme Court in the case of Missouri Pacific R. R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 595, 65 L. Ed. 1087. It was there held that the United States, which had taken possession and control of the railroad, was not liable for the payment of a penalty for nonpayment of wages to railroad employees, imposed by a statute of the state of Arkansas. In that case, section 10 of the Federal Control Act (40 Stat. 456) declared that the carriers "shall be subject to all laws and liabilities as common carriers, whether arising under state or federal laws or at common law"; and section 15 (40 Stat. 458) stated that the "lawful police regulations of the several states" should continue unimpaired. The Arkansas statute (Kirby's Dig. § 6649, as amended by Acts 1905, No. 210) provided that if a railroad failed to pay an employee his full wages within seven days after his discharge, "then as a penalty for such nonpayment the wages of such servant or employee shall continue from the date of the discharge or refusal to further employ, at the same rate until paid." With reference to the nature of this statute, the Supreme

Court of Arkansas held that, technically, it was not a penalty, and had said in Leep v. Railway Company, 58 Ark. 407, 440, 441, 25 S. W. 75, 85, 23 L. R. A. 264, 41 Am. St. Rep. 109: "It is allowed for a double purpose,—as a compensation for the delay, and as a punishment for the failure to pay. It is composed of all the elements and serves all the purposes of exemplary damages."

Despite this construction of the provisions of the statute, the Supreme Court held that, in fact, it imposed a penalty to which the Government had not consented to submit. At page 564 of 256 U. S., 41 S. Ct. 593, 597, Mr. Justice Brandeis said: "The purpose for which the government permitted itself to be sued was compensation, not punishment. * * * Wherever the law permitted compensatory damages they may be collected against the carrier while under federal control. * * * *But double damages, penalties and forfeitures, which do not merely compensate but punish,* are not within the purview of the statute. * * * The amount recovered in the present case over and above the wages due and unpaid with interest *is in the nature of a punishment.* * * * Whatever name be applied, the element of punishment clearly predominates and Congress has not given its consent that suits of this character be brought against the United States." (Italics mine.)

■ This decision, true enough, dealt with a state statute, while the cases which are cited by libelant had to do with the identical statute involved in the present suit. Nevertheless, I am inclined to believe that the decision in the Ault Case is controlling here. As pointed out by Cardozo, J., in Cox v. Lykes Brothers, supra, "the same provision may be penal as to the offender and remedial as to the sufferer. * * * *The nature of the problem will determine* whether we are to take one viewpoint or the other." (Italics mine.) In that case, "the problem" was whether the state court had jurisdiction to give a judgment for double damages against a private corporation. Since Congress had enacted that such damages "shall be recoverable as wages," the Court of Appeals of New York said that "in determining the bounds of jurisdiction, it is not to be classified as a penalty." Similarly, in Buckley v. Oceanic S. S. Co., supra, the question was with regard to which statute of limitations should apply. In Gerber v. Spencer, the problem was whether a seaman's claim for double pay was protected by a lien. In each suit the focus of attention was upon the jurisdiction and procedure incident to the assertion of claims by seamen, as to whom the provisions of Rev. St. § 4529, are, to some extent, undoubtedly compensatory. Where, however, the focus of attention has been upon the respondent rather than upon the person seeking recovery, the Supreme Court has indicated, that differing considerations may lead to a different result.

In Collie v. Fergusson, 281 U. S. 52, 50 S. Ct. 189, 74 L. Ed. 696, the Supreme Court held the double pay provision of Rev. St. § 4529 (46 USCA § 596), to be inapplicable in a case where the delay in payment of wages was due to the insolvency of the owner of the vessel on which the seaman was employed. In referring to the language of the statute, the court said, at pages 55, 56 of 281 U. S., 50 S. Ct. 189, 191: "We think the use of this language indicates a purpose to protect seamen from delayed payments of wages by the imposition of a liability which is not *exclusively compensatory,* but designed to prevent, by its *coercive effect,* arbitrary refusals to pay wages, and to induce prompt payment when payment is possible." (Italics mine.) Earlier in the opinion, after citing with approval many of the cases upon which the present libelant relies, the court stated that: "The increased payment for waiting time is not denominated wages by the statute, and the direction that it shall be recovered as wages does not purport to affect the condition prerequisite to its accrual. * * * *"

Although, in that case, the point chiefly litigated was not the same as that now before this court, the opinion is important, in that it recognizes the fact that double wages treated "as wages" for some purposes does not mean that they shall always be so recognized.

In the present suit "the nature of the problem" is different from that before the court in the cases which libelant cites. Although, for purposes of jurisdiction and procedure, a suit for double pay may be classified as one based upon a claim for compensation, it does not necessarily follow that the imposition of liability for double pay upon the government is not truly to be regarded as being in the nature of a penalty, or punishment. Cf. Collie v. Fergusson, supra.

In the Ault Case, which was treated as a suit against the United States, the Supreme Court established a test for determining whether a statute is penal as to the United States. Under that criterion, the provisions of Rev. St. § 4529 (46 USCA § 596), with respect to double pay clearly appear to be

penal. In the Ault Case, the Arkansas statute provided for the continued payment of wages at the *same* rate from the time of discharge until the date when the wages were paid. In the suit at bar, the burden imposed is twice as heavy—the offending party must pay "a sum equal to *two days' pay for each and every day* during which payment is delayed."

From the decision and reasoning of the Ault Case, it would seem that this liability cannot be imposed upon the government. See *Corrigan v. United States* (D. C.) 298 F. 610.

The decision previously rendered is modified so as to eliminate libelant's recovery of two days' pay for each day since the date upon which the libel was filed.