### THE AMERICAN SHIPPER.

### McCREA v. UNITED STATES.
### No. 212.

Circuit Court of Appeals, Second Circuit.
April 30, 1934.

John M. Scoble, of New York City (K. Courtenay Johnston, of New York City, of counsel), for libelant.

Martin Conboy, U. S. Atty., of New York City (William E. Collins, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The libelant shipped as a fireman on the steamship American Shipper on a voyage from New York to London. The steamer left New York February 15, 1928, and arrived at London the following February 26th. It was owned by the United States and was a merchant vessel subject to the provisions of section 2 of the Seamen's Act of March 4, 1915 (46 USCA § 673), relating to watches, their duties, and their right to discharge.

There were thirteen seamen on the vessel, and they were not, while at sea, divided as equally as that number permitted into watch-es and kept on duty successively as the above statute required. Instead of this, there were three watches of three men each and the remaining four were kept on day duty and not included in any watch.

This libelant had made himself somewhat familiar with the provisions of the Seamen's Act before signing on and also with the decision of the Supreme Court in O'Hara v. Luckenbach S. S. Co., 269 U. S. 364, 46 S. Ct. 157, 70 L. Ed. 313. One of his reasons for becoming a member of the crew of this ship was to take advantage of any violation of the law. He made no complaint during the voyage, but, after the ship docked at London and while the captain was paying the crew about to go on shore leave, one-half of their wages, demanded his discharge with full pay, additional wages for one month, and his passage home on the ground that the seamen had not been divided into equal watches. He then told the captain he was making his demand under section 2 of the Seamen's Act and section 4583, R. S. (46 USCA § 685) and refused to accept half his wages. The master told him he did not know what these sections of the statute were about and would have to look them up, and asked the libelant to meet him at the office of the American consul in London just after noon the next day. He gave libelant the address of the American consulate, and told him they would talk the matter over there. The appellant went to the consulate the next morning and waited until half past 11 when he left after stating his complaint and being informed that he was not entitled to a discharge. He requested a written decision, and, after complying with a request to put his complaint in writing, one to like effect was sent addressed to him in care of the ship. The captain, who had been busy preparing his papers for entry at the customs house, got to the consulate about 2 o'clock that day and was told that the appellant had been there and gone. He then returned to the ship, where he remained most of the time it was in port, but did not see the appellant again.

The appellant testified that he returned from the consulate to the ship, knocked on the captain's door that night and again the next morning, but received no answer at either time. He then asked the chief mate if the captain was aboard, and the mate said he did not know. When he asked the mate for a pass for his clothes, he was told that the mate could not give him one, and he was not allowed to take his clothes when he left the ship soon afterward without any other attempt to see the captain or leaving any in-

formation which would enable the captain to communicate with him. He did not intend to return to the ship when he left, and never did return, but spent about three weeks visiting relatives in England. Becoming somewhat alarmed about his status in England as an alien who had deserted his ship, he then purchased his passage on another vessel and returned to the United States. He brought this action on July 11, 1928.

On August 15, 1932, a decree dated August 12, 1932, was entered in the District Court under which the appellant was awarded the wages due him when he demanded them in London on February 26, 1928, the value of his clothing and effects left on the ship and twice his pay from the commencement of this action to the date of the decree. On August 13, 1932, an assistant United States attorney wrote the judge a letter in which his attention was called to Missouri Pacific R. Co. & Director General v. Ault, 256 U. S. 554, 563, 41 S. Ct. 593, 65 L. Ed. 1087, and to Corrigan v. United States (D. C.) 298 F. 610, 613, on the question of the liability of the government for a penalty and a rehearing was requested. On August 30, 1932, a rehearing was granted.

On March 9, 1933, a decree was entered in which the appellant was granted recovery as in the decree of the previous August with the exception of double pay. An order allowing the appellant an appeal from this decree was signed and filed May 16, 1933. On the same day he filed an assignment of errors. Being an action by a seaman for wages, no bond was required. On July 5, 1933, the district attorney moved in the District Court for an order amending and resettling the March decree. The motion was granted, and on July 18, 1933, the decree was amended by adding thereto this paragraph: "Ordered that the final decree in favor of libelant, entered herein on the 15th day of August 1932, be and the same is in all respects vacated and set aside." On August 10, 1933, an appeal was allowed in the District Court, and new assignments of error were filed by the libelant which, in addition to the issues previously raised, questioned the power of the District Court to enter the decree of March, 1933, and to vacate the August, 1932, decree by the amendment to the March decree of July 18, 1933. It is apparent that the entry of the decree of August 15th two days after the request for rehearing was made was irregular. At that time the matter of a rehearing was pending and a rehearing without restriction was granted August 30th. That action vacated the decree which had been entered. Hook

v. Mercantile Trust Co. of New York (C. C. A.) 95 F. 41. The decree afterwards entered in March, 1933, superseded the decree entered the previous August. Compare Wolff Packing Co. v. Court of Industrial Relations, 267 U. S. 552, 561, 45 S. Ct. 441, 69 L. Ed. 785. The March decree was entered when the matter was still pending in the District Court and when that court had complete jurisdiction. It became the decree of that court. After the appeal was taken from the March decree, however, the cause was pending in this court, and the District Court had no power to take any action in regard to it without our leave. Baltimore S. S. Co. v. Phillips (C. C. A.) 9 F.(2d) 902. The amendment to the March decree, made while the appeal was pending here, will therefore be disregarded as a nullity.

On the merits the important issue is whether the appellant is entitled to recover double wages under the Seamen's Act, section 4529, R. S. (46 USCA § 596). The government has taken no appeal. The decision of the District Court that the appellant was not entitled to any double pay was put on the ground that such requirement of the statute was a penalty not recoverable from the United States.

In Vincent v. United States (C. C. A.) 272 F. 889, it was held, without discussing the point here raised, that the government was bound to pay double wages to seamen. In Gerber v. Spencer (C. C. A.) 278 F. 886, it was held that the statute provided for extra compensation entitled to priority in payment as are wages, and in Buckley v. Oceanic S. S. Co. (C. C. A.) 5 F.(2d) 545, it was held that the double pay was not a penalty. Moreover, in Cox v. Lykes Brothers, 237 N. Y. 376, 143 N. E. 226, it was held that for the purpose of determining whether the state court had jurisdiction this statute was not to be taken to provide for a penalty.

In Missouri Pacific R. Co. v. Ault, 256 U. S. 554, 41 S. Ct. 593, 65 L. Ed. 1087, however, a statute of Arkansas, providing that if a railroad failed to pay an employee his full wages within seven days after discharge, his wages should continue at the same rate until he was paid, was held to create a penalty not recoverable from the United States which had not consented to be sued for that purpose.

The statute here involved calls for the payment of double wages, while the Arkansas statute was only for pay at the same rate. The penalty element is just twice as pronounced in this statute. It may well be that such a statute has the dual purpose of com-

pensation and punishment behind it. But, in deciding whether the United States has agreed to be liable for double the pay of a seaman whenever one of its agents violates this statute, we believe the dominant purpose of the statute must control and that such purpose is punishment for the violation. In the Arkansas statute the pay for delay was called a penalty, while here it is not, but Justice Brandeis made it perfectly clear in his opinion in the Ault Case that the name given to what does more than compensate and does punish is not decisive and double damages is given as an example of what the government has not consented to pay. Even double damages would be much less in degree on the question of punishment than the amount claimed in this case. The wages earned and due the appellant when he demanded his discharge and his pay on February 26, 1928, amounted to $28.95 and he now claims in addition to that with interest, because of the double wage provision of the statute, about $7,000. Obviously such a sum cannot be merely just compensation for delay in paying the wages earned, and we feel bound by the decision in the Ault Case to take a view contrary to that which prevailed in the other cases cited in so far as they may be authority for holding that the United States is subject to the double wage provision of the Seamen's Act (46 USCA § 596).

The appellant also seeks to recover pay for one month and passage to the port at which he shipped, under section 4583, R. S. (46 USCA § 685). That section of the statute applies to a seaman who is actually discharged in a foreign country by a consular officer on his complaint that the voyage is continued contrary to agreement, or that the vessel is badly provisioned or unseaworthy, or against the officers for cruel treatment. When a seaman is so discharged by a consular officer, it is the duty of the consul or consular agent, after inquiry and upon being satisfied of the truth and justice of the complaint, to "require the master to pay to such seaman one month's wages over and above the wages due at the time of discharge, and to provide him with adequate employment on board some other vessel, or provide him with a passage on board some other vessel bound to the port from which he was originally shipped, or to the most convenient port of entry in the United States, or to a port agreed to by the seaman." By its express terms the conditions precedent to its application are both a discharge in accordance with its provisions and consular action requiring the master to pay and provide. It is evident that the appellant, who deserted his ship when he failed to get favorable action from the consul in London on his complaint and was not discharged, has no cause of action under this statute, since the conditions essential to its application have not been, and cannot be, shown.

Decree affirmed.