DISTRICT 2, MARINE ENGINEERS BENEFICIAL ASSOCIATION, ASSOCIATED MARITIME OFFICERS, AFL–CIO, Plaintiff,

v.

Brock ADAMS et al., Defendants.

No. C 77–370.

United States District Court, N. D. Ohio, W. D.

Nov. 18, 1977.

Gerald B. Lackey, Green & Lackey, Toledo, Ohio, for plaintiff.

Thomas L. Dalrymple, Fuller, Henry, Hodge & Snyder, Asst. U. S. Atty., Toledo, Ohio, for defendants.

## MEMORANDUM and ORDER

WALINSKI, District Judge.

This cause came to be heard on three motions: Plaintiff's Motion for a Preliminary Injunction; Defendant Cleveland Tankers, Inc.'s Motion to Dismiss Complaint, filed pursuant to Rules 12(b)(1) and (2), Federal Rules of Civil Procedure; and the Defendant Government's Motion to Dismiss, filed pursuant to Rules 12(b)(1) and (6). A hearing on Plaintiff's Motion for a Preliminary Injunction was held on November 10, 1977, and this matter is now before the Court for determination.

### I. Preliminary Statement

Plaintiff, District 2, Marine Engineers Beneficial Association, Associated Maritime Officers, AFL–CIO, brings this action to enforce the provisions of 46 U.S.C. § 673, which states, *inter alia:*

> In all merchant vessels of the United States of more than one hundred tons gross, excepting those navigating rivers, harbors, lakes (other than Great Lakes), bays, sounds, bayous, and canals, exclusively, the licensed officers and sailors, coal passers, firemen, oilers, and water

tenders shall, while at sea, be divided into at least three watches, which shall be kept on duty * * * successively for the performances of ordinary work incident to the sailing and management of the vessel * * *.

Plaintiff also seeks enforcement of 46 U.S.C. § 689, which states:

The Commandant of the Coast Guard *shall enforce* sections 643, 660a, 672a, *673*, and 710a of this title as to all vessels of the United States subject to said provisions of said sections through collectors of customs and other Government officers acting under the direction of the Coast Guard, and shall make such rules and regulations as he may deem necessary to carry out the provisions of said sections. (*Emphasis added.*)

Finally, plaintiff seeks enforcement of 46 C.F.R. § 157.20–5, promulgated pursuant to 46 U.S.C. §§ 673 and 689, *supra*, which states, in pertinent part:

157.20–5 Division into three watches.

(a) On vessels to which all of the provisions of section 2 of the Seamen's Act of 1915, as amended (49 Stat. 1933; 46 U.S.C. 673), apply, the *licensed officers,* sailors, coal passers, firemen, oilers, and water tenders *shall, while at sea, be divided into at least three watches, the number in each watch to be as nearly equal as the division of the total number in each class will permit. The watches shall be kept on duty successively.* The requirement for division into watches applies only to those classes of the crew specifically named in the aforesaid section 2: * * *.

(b) *Officers in Charge, Marine Inspection, will note that the three-watch system extends to all licensed officers* and to the sailors, coal passers, firemen, oilers, and water tenders of all vessels to which all of the provisions of section 2 of the Seamen's Act of 1915, as amended (49

Stat. 1933; 46 U.S.C. 673) apply and will be governed accordingly in fixing the complement of licensed officers and crew, as authorized by R.S. 4463, as amended (46 U.S.C. 222); * * *. (Emphasis added.)

Plaintiff's Complaint alleges that Defendant Cleveland Tankers, Inc. is presently operating the oil tankers *M/V Saturn* and *M/V Jupiter* on the Great Lakes without institution or utilization of a three-watch system for its licensed engineering officers, in violation of 46 U.S.C. § 673, and 46 C.F.R. § 157.20–5. Plaintiff further alleges that the Defendant United States Coast Guard and the commanding officers thereof have failed to enforce the provisions of 46 U.S.C. § 673, in violation of 46 U.S.C. § 689. Plaintiff seeks preliminary and permanent injunctive relief, and relief in the nature of mandamus. Jurisdiction is alleged pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1361.

## II. Defendant Government's Motion to Dismiss

Defendant Government first asserts that Plaintiff MEBA lacks standing to bring this action because it has not alleged "injury in fact."

In *Warth v. Sedlin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), the Supreme Court reaffirmed the long-standing principle that a plaintiff has standing to sue when he has suffered "threatened or actual injury resulting from putatively illegal action." The claimed illegal action by the Defendant Government in the instant case is the Coast Guard's alleged failure to enforce 46 U.S.C. § 673, as required by 46 U.S.C. § 689. Since § 673 was enacted for the protection of seamen, *O'Hara v. Luckenbach S.S. Co.*, 269 U.S. 364, 46 S.Ct. 157, 70 L.Ed. 313 (1925), it appears to the Court that the licensed engineers on whose behalf this action is brought by MEBA[1] have in-

---

1. Defendant Government has not directly raised the question of MEBA's standing to enforce a federal claim on behalf of its members. It is clear, however, that MEBA, a labor organization which represents the licensed engineers employed upon the *M/V Saturn* and the *M/V*

*Jupiter,* is an appropriate representative of the licensed operating engineers to invoke the Court's jurisdiction under the standards enunciated in *Warth v. Sedlin*, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

deed suffered "threatened \* \* \* injury" from the Defendant Government's alleged failure to enforce the statute. Accordingly, the Court finds that Plaintiff MEBA does have standing to maintain this action.

The Government further moves to dismiss Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction.

The Government asserts that the Court cannot maintain jurisdiction of this action under § 1331 because the action does not arise "under the Constitution, laws, or treaties of the United States." This argument is patently erroneous, as plaintiff's claim is based solely upon duties alleged to be imposed by federal statute, and therefore is properly maintained under § 1331.

The Government also attacks plaintiff's allegations of jurisdiction under 28 U.S.C. § 1361, which provides that:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiff.

The Government asserts that there is no duty owed by the federal defendants to the plaintiff, and that jurisdiction therefore does not lie under 28 U.S.C. § 1361.

■ The Government's argument appears to confuse the issue of the Court's subject matter jurisdiction with the merits of plaintiff's claim for mandamus relief. To invoke the Court's jurisdiction under 28 U.S.C. § 1361, a plaintiff must allege that the federal defendants are officers or agencies of the United States who owe him the performance of a clear, ministerial and non-discretionary duty. *See Mattern v. Weinberger*, 519 F.2d 150, 155–57 (3d Cir. 1975). The statute upon which the plaintiff bases its claim in the instant case states that the Coast Guard "shall enforce" § 673. Based upon the language of the statute, the Court finds that the plaintiff has made a sufficient showing of a statutory duty to permit § 1361 jurisdiction. This determination is not, of course, a decision on the merits of plaintiff's claim. *See Andujar v. Weinberger*, 69 F.R.D. 690 (S.D.N.Y.1976).

For the reasons stated above, the Court also determines that plaintiff has pleaded allegations sufficient to state a claim for relief against the federal defendants. Accordingly, the Government's Motion to Dismiss under Rule 12(b)(6) will be denied.

### III. Defendant Cleveland Tankers, Inc.'s Motion to Dismiss

Defendant Cleveland Tankers has also moved to dismiss plaintiff's claims on the grounds that this Court lacks subject matter jurisdiction.

■ It is clear that plaintiff cannot predicate this Court's subject matter jurisdiction over its claims against Defendant Cleveland Tankers on 28 U.S.C. § 1361. Courts have unanimously held that § 1361 does *not* provide a basis for subject matter jurisdiction against private persons. *See Network Project v. Corporation for Public Broadcasting*, 398 F.Supp. 1332 (D.D.C.1975); *Bucks County Bd. of Comm'rs v. Interstate Energy Co.*, 403 F.Supp. 805 (E.D.Pa.1975); *Thomas v. DeVilbiss*, 408 F.Supp. 1357 (D.Ariz.1973). Accordingly, it remains only for the Court to consider whether subject matter jurisdiction over plaintiff's claims against Defendant Cleveland Tankers can properly be predicated on 28 U.S.C. § 1331.

■ Defendant Cleveland Tankers correctly notes that plaintiff has failed to plead that the amount in controversy exceeds $10,000, as required by § 1331(a). Plaintiff, in response, asserts that a $10,000 amount in controversy may be inferred from the allegations that Defendant Cleveland Tankers is not complying with a law which has as its penalty provision, inter alia, a fine of $500. Plaintiff asserts that since Defendant Cleveland Tankers has allegedly operated without a three-watch system since March of 1977, it is subject to fines in excess of $10,000, and that this potential liability provides the requisite amount in controversy under § 1331(a).

The case law is clear, however, that where the plaintiff seeks *injunctive relief*, as does the plaintiff in the instant case, the amount in controversy is determined by the value to the plaintiff of the right he seeks to protect.[2] *Goldsmith v. Sutherland*, 426 F.2d 1395 (6th Cir. 1970); *Pennsylvania R. Company v. City of Girard*, 210 F.2d 437, 439 (6th Cir. 1954). Plaintiff's pleadings make no attempt to demonstrate that the value in money of the right which it seeks to protect can be calculated or ascertained to exceed $10,000.[3] Accordingly, the Court must dismiss without prejudice plaintiff's claims against Defendant Cleveland Tankers, Inc. for the reason that this Court lacks subject matter jurisdiction over said claims.

### IV. Plaintiff's Motion for Preliminary Injunction

Plaintiff seeks a preliminary mandatory injunction requiring the defendants, their officers, agents, servants, employees and attorneys, and those present and in active concert with them, to perform their statutory duty pursuant to 46 U.S.C. § 689, by enforcing the three-watch requirement of 46 U.S.C. § 673, against the vessels *Saturn* and *Jupiter*.

### A. Statement of Facts

Based upon the stipulations of the parties and the evidence adduced at the evidentiary hearing held before the Court on November 10, 1977, the Court makes the following findings of fact:

1) The vessels *Saturn* and *Jupiter* are merchant vessels of the United States of more than one hundred tons gross, and are currently navigating the Great Lakes.

2) The vessels *Saturn* and *Jupiter* are "sister ships", and both vessels have automatically-controlled engine rooms, meaning that the engines of the vessels can be fully controlled from the pilot house.

3) On or about May 6, 1976, the United States Coast Guard issued a Certificate of Inspection to the vessel *Jupiter* which establishes the complement of personnel required to operate the vessel, pursuant to 46 U.S.C. § 222. Said Certificate of Inspection requires that the vessel carry one (1) Chief Engineer and two (2) Assistant Engineers. Joint Exhibit 1.

4) On or about March 31, 1977, the United States Coast Guard issued a Certificate of Inspection Amendment to the vessel *Jupiter*, which states:

THIS VESSEL AUTHORIZED TO OPERATE WITH UNATTENDED ENGINEROOM.
ACCEPTANCE OF THIS UNATTENDED ENGINEROOM WILL NOT ELIMINATE THE REQUIREMENT FOR ENGINEERING PERSONNEL REQUIRED BY THE CERTIFICATE OF INSPECTION TO BE ON BOARD.

Joint Exhibit 1, p. 5.

5) On or about May 9, 1977, the United States Coast Guard issued a Certificate of Inspection Amendment to the vessel *Jupiter*, which states:

THIS VESSEL MAY BE NAVIGATED WITH THE ENGINEROOM UNATTENDED EXCEPT WHEN IN CONFINED OR CONGESTED WATERS.

Joint Exhibit 1, p. 4.

6) On or about May 16, 1977, the United States Coast Guard issued a Certificate of

---

**2.** It is also clear under the case law that you cannot look to the *collateral effect* of a judgment to determine the amount in controversy. *Moore's Federal Practice* ¶ 0.91[2]. In the case *sub judice*, any fine imposed upon the Defendant Cleveland Tankers would be collateral to a mandamus order, and would not be a direct result of the instant proceedings. Therefore, plaintiff cannot establish the requisite amount in controversy by reference to the penalty provision of § 673.

**3.** Plaintiff correctly notes that, under the controlling case law, dismissal for failure to satisfy the jurisdictional amount is inappropriate un-

less it appears as a legal certainty that less than $10,000 is at issue. *St. Paul Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 288–89, 58 S.Ct. 586, 82 L.Ed. 845 (1938), *followed in Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). And, as a general rule, the amount stated in the plaintiff's complaint controls, if the claim is made in good faith. *Id.* However, the case law imposes no duty upon the Court to create a jurisdictional base where the plaintiff has not spelled one out in his pleadings. *See Clark v. Nat'l Travelers Life Insurance Co.*, 518 F.2d 1167 (6th Cir. 1975).

Inspection to the vessel *Saturn* which establishes the complement of personnel required to operate the vessel, pursuant to 46 U.S. § 222. Said Certificate of Inspection requires that the vessel carry one (1) Chief Engineer, and two (2) Assistant Engineers. Joint Exhibit 2. Said Certificate also states that "The vessel may be navigated with the engineroom unattended except when in confined and congested waters." Joint Exhibit 2, p. 3.

7) Prior to issuing the Certificates of Inspection permitting unattended engineroom operation to the vessels *Saturn* and *Jupiter*, the United States Coast Guard conducted examinations of the vessels. Through these examinations, the Coast Guard determined that the vessels *Saturn* and *Jupiter* complied with the guidelines set forth in Navigation and Inspection Circular No. 1–69.

8) Circular No. 1–69 distributes a "Guide for the Automation of Main and Auxiliary Ship's Machinery." The Circular introduces the Guide as follows:

1. *Purpose* : This circular distributes a "Guide for the Automation of Main and Auxiliary Ship's Machinery" to all interested and affected members of the marine community. With the current trend to fewer engineering watchstanders, it is essential that all concerned be aware of the equipment and systems necessary to reduce the manning in machinery spaces without compromising the safety of life and property. This circular and the enclosed guide supersedes the information previously issued as NVIC 5–67.

2. *Discussion* : 46 U.S.C. 222 (R.S. 4463) specifies that no vessel subject to the inspection laws shall be navigated unless she shall have in her service and on board such complement of licensed officers and crew, as may in the judgment of the Coast Guard be necessary for her safe navigation. Thus the number of watchstanders required on any particular vessel is specified by the Officer in Charge, Marine Inspection of the appropriate marine inspection zone based upon his evaluation of the vessel, equipment, route, and service. With the rapid application of modern control technology to marine power systems, the Coast Guard has found it necessary to publish this circular for guidance and for uniformity in considering automation features to permit a reduction in the customary number of engineering watchstanders.

In recent years it has been customary to operate a steam propulsion plant with a three man watch. This consisted of a fireman/watertender supervising the boiler; an oiler or better acting as a data recorder, roving patrol and general assistant to; the licensed engineer, who supervised the watch, performed as throttleman, and conducted or supervised minor or routine maintenance. Additionally these three men by their sense of sight, sound, smell and engineering judgment or intuition, performed as trouble detection systems in the event of fire, flooding or machinery malfunction.

The evolution from manned to unmanned enginerooms as proposed by the industry is:

a. The elimination of the fireman/watertender by the installation of a fully automated boiler or by the installation of a self regulating boiler with certain re-allocations of responsibilities to the remaining watchstanders. Automatic boiler alarms and safety shut-down devices have been incorporated in both of these approaches.

b. The elimination of both the fireman/watertender and the oiler by the installation of a fully automated boiler, pilothouse throttle control, and a centralization of controls and instrumentation within the machinery space. The arrangement must permit the engineer to monitor and control the machinery from a single location.

c. The elimination of all watchstanders by the installation, in addition to that of b above, of a sophisticated and extensive monitor and alarm system. The emphasis on machinery operation is from remote control to self regulation, i. e. fully automated. Alarm systems are required for fire and flooding detection.

With this total substitution of machinery for human intelligence, the problems of reliability and maintenance must be considered and evaluated.

The final manning requirements established for any vessel will be based upon the results of: (1) a complete plan review of the equipment, and the monitoring safety and labor saving devices installed, (2) a period of proven operation and reliability following the initial testing and de-bugging, (3) a period of Coast Guard on-board observation, and (4) for unattended machinery operation, an acceptable plant maintenance program which insures the continued quality of the demonstrated plant reliability. Acceptance of an unattended engineroom will not eliminate the requirement for engineering personnel to be on board. Sufficient qualified personnel will be required to: (1) Operate and monitor the plant in event of control failure, (2) make emergency repairs in event of machinery casualties, (3) perform daily or periodic operations, inspections, and maintenance to insure the continued quality of plant performance.

The purpose of the enclosed guide then, is to provide an indication of the operational capabilities of the equipment and systems necessary to comply with the above concepts.

Design standards for shock, vibration, endurance, power supply fluctuation, and other environmental conditions have not been specified. These will be developed as experience is gained. Equipment which proves inadequate shall be replaced or the vessel manning shall be modified to compensate for the equipment failure.

The various sections of the guide should be applied as indicated above for the different manning levels. For diesel vessels the concepts of b and c above are applicable. Although the enclosure is a guide and therefore not mandatory by law, it does represent our experience and/or evaluation to date, and therefore in the context of 46 U.S.C. 222 represents the "judgement of the Coast Guard." Deviation from the enclosed guide must be well founded and acceptable to the cognizant Officer in Charge, Marine Inspection.

\* \* \* \* \* \*

9) Upon determining that the vessels *Saturn* and *Jupiter* satisfied the guidelines set forth in Circular 1–69, the Coast Guard approved the vessels for "unattended engineroom operation" in unconfined and uncongested waters. M/V *Saturn* and M/V *Jupiter* are the only vessels navigating the Great Lakes that have been approved for unattended engine room operation.

10) It is stipulated that the vessels *Saturn* and *Jupiter* do not operate a three-watch system for licensed engineers.

11) It is further stipulated that, in uncongested and unconfined waters, the Coast Guard is *approving* operation of the vessels *Saturn* and *Jupiter* on a non-three-watch basis as to licensed engineers.

12) All licensed engineers aboard the vessels *Saturn* and *Jupiter* are currently working a single shift from 8:00 A.M. to 4:30 P.M.

13) The quarters of the licensed engineers are located adjacent to the engine room on both the *Saturn* and *Jupiter*. Sound and light alarms are activated whenever there is a malfunction in the engine room. The Certificate of Inspection issued the vessel *Saturn* requires that an engineer be "on standby at all times the vessel is conducting its business." Joint Exhibit 2. The Certificate of Inspection issued the vessel *Jupiter* contains no such requirement. Joint Exhibit 1.

### Conclusions of Law

█ Four standards must be considered by the Court in determining whether preliminary injunctive relief should issue:

1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Ass'n v. Knebel*, 563 F.2d 256 (6th Cir. filed September 20, 1977).

■ To establish a claim to mandamus relief, a plaintiff must demonstrate:

a. A right in the plaintiff to the relief sought;

b. A clear duty on the part of the defendant to provide relief;

c. The absence of another adequate remedy at law.

*See United States ex rel. Girard Co. v. Helvering*, 301 U.S. 540, 57 S.Ct. 855, 81 L.Ed. 1272 (1937).

In the case *sub judice*, the plaintiff asserts that his entitlement to mandamus relief is apparent from the face of the statutes at issue. Specifically, plaintiff notes that § 673 provides that on subject vessels "the licensed officers * * * shall, while at sea, be divided into at least three watches, which shall be kept on duty successively for the performance of ordinary work incident to the sailing and management of the vessel." Plaintiff further notes that § 689 provides that the "Commandant of the Coast Guard shall enforce * * * 673 * * * *."

Notwithstanding the mandatory language of these provisions, the federal defendants contend that neither § 673 nor § 689 prescribe a legal duty, so plainly prescribed as to be free from doubt, that is owing by them to the plaintiff. It is the Government's position that the three-watch requirement of § 673 *only* applies where such is required for the ordinary work of the vessel. The Government further contends that there is no duty whatsoever imposed upon it by § 689.

Although the true issue in the case is whether 46 U.S.C. § 689, imposes a ministerial, non-discretionary duty upon the Coast Guard to enforce the statutes enumerated therein, the Court finds it necessary to first analyze the provisions of 46 U.S.C. § 673.

As noted above, courts which have construed § 673 have unanimously concluded that the purpose of the enactment was to promote safety at sea, rather than to regulate working conditions. *O'Hara v. Luckenbach S.S. Co.*, 269 U.S. 364, 46 S.Ct. 157, 70 L.Ed. 313 (1926), *followed in Southern Pac. Co. v. Hair*, 24 F.2d 94 (5th Cir. 1928); *El Estero*, 14 F.2d 349 (S.D.Tex.1926); *The American Shipper*, 3 F.Supp. 184 (S.D.N.Y. 1932), *aff'd*, 70 F.2d 632 (2d Cir. 1934), *aff'd sub nom. McCrea v. United States*, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735 (1935). Section 673 quite clearly reflects the judgment of Congress, reached in 1915 after several serious disasters at sea, that a three-watch requirement is a necessary

> measure of precaution against those perilous and often unexpected emergencies of the sea when only immediate and wakeful readiness for action may avert disaster or determine the issue between life and death.

*O'Hara v. Luckenbach S.S. Co., supra*, 269 U.S. at 368, 46 S.Ct. at 159.

Keeping in mind the purpose underlying the three-watch requirement, courts which have considered § 673 have been loathe to permit the slightest variance from the plain language of the statute. Courts have held, for example, that the fact that a vessel carries *more men* than required by its Certificate of Inspection does not relieve the ship from compliance with the three-watch requirement of § 673, and that the additional men must also be divided into watches. *See Southern Pac. Co. v. Hair*, 24 F.2d 94 (5th Cir. 1928); *The American Shipper*, 3 F.Supp. 184 (S.D.N.Y.1932), *aff'd*, 70 F.2d 632 (2d Cir. 1934), *aff'd sub nom. McCrea v. United States*, 294 U.S. 23, 55 S.Ct. 291, 79 L.Ed. 735 (1935).

The decision of the Court in *El Estero*, 14 F.2d 349 (S.D.Tex.1926), is particularly instructive. In *El Estero*, two seamen brought suit for wages under § 2 of the Seamen's Act, alleging that the vessel was not properly operating a three-watch system. The facts demonstrated that the vessel's captain had divided the seamen required by the local Certificate of Inspection into watches, but also employed additional seamen and did not divide those seamen

into watches. The vessel captain claimed that if the additional seamen were divided into watches, the ship would have been deprived of their services in working and keeping the deck in condition. The court met this claim with the following statement:

In short, the respondent's position is, if the ship can satisfy the local inspectors as to her navigation requirements, she may employ as many additional seamen as she wants, without any of them having the protection of that part of the act providing for their division into watches. I think this position unsound, both as contrary to the letter and the spirit of the act. The only distinction between this case and O'Hara's, where the seven sailors kept at day work only were held to be entitled to their discharge, because not divided into watches, is the matter of this certificate. It will certainly not do to say that, by a device as transparent as this, the provision for watches may be nullified, unless in the law which provided for a certificate of inspection there is expressed or implied a limitation of the operation of the act under consideration. This I cannot find.

*El Estero*, 14 F.2d 349, 350 (S.D.Tex.1926).

This Court has likewise examined the statutory section which provides for issuance of a Certificate of Inspection by the Coast Guard [46 U.S. § 222], and finds therein neither an implied or express limitation of the three-watch requirement contained in § 673.

46 U.S.C. § 222, provides, *inter alia* :

No vessel of the United States subject to the provisions of title 52 of the Revised Statutes or to the inspection laws of the United States shall be navigated unless she shall have in her service and on board such complement of licensed officers and crew including certificated lifeboat men, separately stated, as may in the judgment of the Coast Guard be necessary for her safe navigation. The Coast Guard shall make in the certificate of inspection of the vessel an entry of such complement of officers and crew including cer-

tificated lifeboat men, separately stated, which may be changed from time to time by indorsement on such certificate by the Coast Guard by reason of change of conditions or employment. Such entry or indorsement shall be subject to a right of appeal, under regulations to be made by the Commandant of the Coast Guard, to the Commandant of the Coast Guard, who shall have the power to revise, set aside, or affirm the said determination.

\*　　\*　　\*　　\*　　\*　　\*

If the vessel shall not be manned as provided in this section, the owner shall be liable to a penalty of $100, or in case of an insufficient number of licensed officers to a penalty of $500.

Thus, by the express language of § 222, Congress entrusted to the judgment of the Coast Guard the determination of the precise manning requirements for each vessel. However, it does not follow from the proposition that Congress permitted the Coast Guard to exercise its judgment as to the number of persons required to man the vessel that it likewise intended to permit the Coast Guard to waive, in its discretion, the three-watch requirement of § 673. Nothing in the language of either § 222 or § 673 suggests to the Court that Congress intended to vest any discretion whatsoever in the Coast Guard regarding the watches to be stood on vessels. While Congress presumably could have left to the Coast Guard the decision as to the system of watches required for the safety of each individual vessel and its crew, it chose instead to prescribe a uniform three-watch requirement for all vessels.

The defendants contend that support for the notion that the three-watch requirement of § 673 is limited by § 222 is found in the following language contained in 46 C.F.R. § 157.20–5:

(b) Officers in Charge, Marine Inspection, will note that the 3-watch system extends to all licensed officers \* \* \* of all vessels to which the provisions of §§§ [§ 673] apply and will be governed accordingly in fixing the complement of licensed officers and crew as authorized by \* \* \* [§ 222] \* \* \*.

However, the Court reads this provision to compel the contrary conclusion. By instructing the Coast Guard to keep in mind the three-watch requirement of § 673, the regulation clearly indicates that § 673 limits § 222, and not vice-versa.

Therefore, based upon a careful examination of Title 46, and the regulations promulgated thereunder, the Court concludes that *there exists no authority whatsoever for nullifying the three-watch requirement of § 673.*

The Court recognizes that § 673 was enacted over sixty (60) years ago at a time when the technology of the shipping industry was significantly less advanced than it is today. Furthermore, the Court is wholly sympathetic to the Coast Guard's efforts to adopt its safety enforcement efforts to the industry's technological advances. However, it is the function of the Congress and not the courts to determine the protective measures required for safe navigation of merchant vessels. If the Coast Guard and the shipping industry find the three-watch requirement of § 673 to be unnecessary and unduly burdensome under current conditions, they may petition Congress for a statutory amendment which will accommodate the present technology of the industry.

Having determined that the three-watch requirement of § 673 is not nullified or limited by any other statutory or regulatory provision, it remains for the Court to consider whether § 689 imposes a ministerial, non-discretionary duty upon the Coast Guard to enforce § 673.

■■■ An official action is said to be ministerial only when the duty is so plainly prescribed as to be free from doubt. Section 689 provides that "the Commandant of the United States Coast Guard *shall enforce* the requirements of * * * 673 * *." (*Emphasis added.*) In the view of the Court, Congress could not have chosen any language which would more plainly prescribe the Coast Guard's duty.

While the defendants contend that § 673 and § 689 "shed no light on the duty of the federal defendants with respect to the plaintiff", the Court finds the duty owed by the defendants to the plaintiff to be patently clear from the face of the statutes. Plainly read, the statutes impose upon the Commandant of the Coast Guard the duty to protect the health and welfare of the plaintiff by invoking the penalty provision of § 673 against the vessels *Saturn* and *Jupiter.*[4]

■■■ Based upon this finding, the Court concludes that the plaintiff has shown a strong probability of establishing the first two elements of its claim for mandamus relief. Therefore, it remains for the Court to consider whether plaintiff has shown the absence of another adequate remedy at law.

Defendants contend that plaintiff has another adequate remedy at law in that its members can leave the vessels and sue for their wages under 46 U.S.C. § 673. It is clear to the Court, however, that an action for wages under § 673 would not afford plaintiff "a remedy equally adequate and complete", *United States ex rel. Girard Co. v. Helvering*, 301 U.S. 540, 544, 57 S.Ct. 855, 857, 81 L.Ed. 1272 (1937), for the simple reason that plaintiff could not, through such an action, compel imposition of the penalty provision of § 673 against the vessels. The grant to seamen of a remedy that would not exist in the absence of specific authorization does not, in the view of the Court, preclude the availability of further relief consistent with the statutory scheme. The recovery by individual seamen of wages lost after leaving the ship would not compel the measure of safety at sea which § 673 was intended to ensure. Accordingly, the Court determines that plaintiff has no adequate remedy at law for the claim it asserts. *See generally Safir v. Gibson*, 417 F.2d 972, 978 n. 8 (5th Cir. 1969).

4. Defendants assert that they have no *duty* under § 673 or § 689 because they have no authority to collect a penalty if one were assessed. The Court fails to see how the fact that collection proceedings would be left to the Attorney General negates the Coast Guard's duty to assess the fines. *See generally United States v. Cheramie Bo-Truc # 5, Inc.*, 538 F.2d 696 (5th Cir. 1976).

For the reasons set forth above, the Court finds that the plaintiff has demonstrated a strong probability of success on the merits of its claim. The Court further finds that the facts demonstrate that both the licensed engineers represented by the plaintiff and the public generally may suffer irreparable injury if plaintiff's motion for preliminary injunctive relief is not granted. Finally, the Court finds that any injury resulting to the defendants from issuance of a preliminary injunction in this action prior to full adjudication on the merits would be negligible.

Therefore, it is

ORDERED that Defendant Cleveland Tankers, Inc.'s Motion to Dismiss should be and hereby is dismissed for the reason that this Court lacks subject matter jurisdiction.

IT IS FURTHER ORDERED that the Defendant Government's Motion to Dismiss should be and hereby is denied.

IT IS FURTHER ORDERED that the federal defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert with them, should be and hereby are preliminarily enjoined to perform their statutory duty pursuant to 46 U.S.C. § 689, by enforcing the provisions of 46 U.S.C. § 673, against the vessels *Saturn* and *Jupiter*.